WILLIAM M. ZEARING

*v.*

JOHN RABER.

1. STREET — *lots sold in reference to.* Where the owner of land has the same platted, showing a street, and sells a part with reference to such street, which is mentioned in the description in the deed, although the street is not opened, or the map thereof acknowledged or recorded, this will be an immediate dedication of the street as to such purchaser, and the grantor and all persons claiming under him will be estopped from denying the existence of the street.

2. If land is conveyed as bounded on a street, this is not merely a description, but an implied covenant that there is such a street, and the grantor and those claiming under him are forever estopped from disputing the existence of such street.

3. CHANCERY JURISDICTION — *to preserve use of street.* Where lots are sold with reference to a street abutting the same, a court of equity will interfere to prevent a party claiming under the original owner and grantor from destroying the full use of such street as originally designed.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

This was a bill in chancery, by the appellee against the appellant, to prevent a threatened obstruction of the use of a street or way. The facts appear in the opinion.

Messrs. DENT & BLACK, and Mr. W. M. ZEARING, for the appellant.

Messrs. ROSENTHAL & PENCE, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

James, Springer and Green, being owners, as tenants in common, of a certain out lot, south and in the immediate vicinity of the city of Chicago (except a strip extending through its center from north to south, used as railroad right of way), laid out a street across such lot from east to west, extending from State street to what was then called Thompson street, but is now known as Wentworth avenue. They caused ditches to be dug and a roadway thrown up along the street, so far as it extended on their ground, and erected a fence on its north side from State street to the railroad right of way. They also prepared a map of the lot, showing the location of this street, designated thereon "Green street."

The map, however, was neither acknowledged nor recorded for the purpose of making a statutory dedication of the street.

One Walenta subsequently became the purchaser of a portion of the lot, which was conveyed to him by deed from James, Springer and Green, by the following description: "Commencing at the south-east corner of said lot 5, and running thence due north 152 feet to a street 66 feet wide, extending from State street to Thompson street; thence due west 672 feet, more or less, to land owned and occupied by the Michigan Southern and Chicago and Rock Island railroads; thence south 152 feet, thence east 672 feet, more or less, to the place of beginning."

This property was subsequently conveyed to appellee, by deed, by the same description. After the sale and conveyance to Walenta, we may assume, for the purposes of the questions to be determined, without critically noticing the several deeds relating to his title, appellant became the owner of the residue of the lot, except that part occupied as railroad right of way. In the deeds under which he derived title, this language occurs in describing the property conveyed to him: * * * lot number 5, in section 16, township 38 north, range 14 east, excepting and reserving so much of lot 5 as was sold to Ru-

dolph Walenta, October 4th, 1859, and described as follows : "
(as in said deed to Walenta) " the premises hereby conveyed,
containing 3 $\frac{6\,5}{1\,0\,0}$ acres, more or less, subject to any and all
railroads, public streets, lanes, alleys or highways running
upon, along or through said premises, or any part thereof."

Aside from the language in the deeds, the evidence is clear
that Walenta, in purchasing from James, Springer and Green,
and appellee, in purchasing from him, did so with express
reference to the supposed existence of the street; and that
when appellant purchased, he was fully informed of what had
been done to establish the street, and what rights had been
acquired on the faith thereof.

The question is, can appellant now be heard to deny the ex-
istence of the street ?

It is unimportant whether the public have so far accepted
the dedication as to be bound to keep the street in repair, since
the question involved is simply one of private right.  Nor do
we conceive it necessary to determine where the fee in the soil
of the supposed street is ; whether it is in the adjacent prop-
erty holders to the center of the street, or remains in the orig-
nal owners until there shall be sufficient evidence of accep-
tance by the public.  If appellee is entitled to have the street
kept open for use, it will be sufficient.

That appellant is, under the facts given, estopped from deny-
ing the existence of the street, can hardly admit of contro-
versy.  The principle applicable is well stated by the editors
of Smith's Leading Cases (7th Am. ed., vol. 2, 154), in a re-
view of the authorities relating to the point ; and inasmuch as
what is there said covers the entire ground in controversy, and
meets with our approval, we shall content ourselves with tran-
scribing it.

" If one owning land exhibit a map of it, on which a street
is defined, though not as yet opened, and building lots be sold
by him with reference to a front or rear on that street, or lots
he conveyed being described as by streets, (*Scheuler* v. *Com-
monwealth*, 26 Penn. St. 62 and ed. 29) this is an immediate

dedication of that street, and the purchasers of lots have a right to have that street thrown open forever; *Wyman* v. *Mayor, etc.*, 11 Wend. 487; *Livingston* v. *Mayor, etc.*, 8 id. 85; and see the *Matter of Twenty-ninth and Thirty-ninth Streets*, 1 Hill, (N. Y.) 189, 192; and this principle is not limited in its application to the single street on which such lots may be situated. If the owner of land lays out and establishes a town, and makes and exhibits a plan of the town, with various plats of spare ground, such as streets, alleys, quays, etc., and sells the lots with clear reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege and advantage which the plan represents as belonging to them as a part of the town, or to their owners as citizens of the town. And the right thus passing to the purchasers is not the mere right that such purchaser may use these streets, or other public places, according to their appropriate purposes, but a right vesting in the purchasers, that all persons whatever, as their occasion may require or invite, may so use them; in other words, the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchasers, that the streets and other public places, indicated as such upon the plan, shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use. *Rowan's Ex.* v. *Town of Portland*, 8 B. Monr. 232, 237; see also *Bowling Green* v. *Hobsen*, 3 id. 478, 481; *Huber et al.* v. *Gazley et al.* 18 Ohio 18; *Dummer* v. *Doe ex dem. Selectmen of Jersey City*, Spencer, 86, 106; *Wickliffe* v. *City of Lexington*, 11 B. Monr. 163."

Other authorities, cited in appellee's briefs, will, on examination, be found fully sustaining this quotation. Thus in *Parker* v. *Smith*, 17 Mass. 412, and in *Thomas* v. *Poole*, 7 Gray, 83, it is held that the general principle often recognized in that State is, "If land be conveyed, as bounded upon a way or street, this is not merely a description, but an implied covenant that there is such a way, and the grantor and his heirs are estopped to deny such a way as existing. So also a bound-

ary, on a passage-way two rods wide, which is to be laid out between the premises and land of A, estops the grantor, and those claiming under him, to deny the existence of the passage-way. *Tufts* v. *Charlestown,* 1 Gray, 271."

To the same effect is *Hawley* v. *The Mayor,* 33 Md. 280; see also *Smith* v. *Lock,* 18 Mich. 56; *Trustees et al.* v. *Walsh,* 57 Ill. 368.

The principle is equally applicable to the portion of the street lying west as to that lying east of the railroad right of way, the description in the deed to Walenta expressly stating that the line of the property conveyed ran *north to a street sixty-six feet wide, extending from State street to Thompson street;* and the conveyances to appellant, in clear and direct terms, *excepting public streets, etc., running upon or through said premises.* What difficulties may be encountered in crossing the railroad right of way, or in opening up the street there, in nowise concern appellant. He has no right in the streets laid out over the lot by his grantor, and appellee is entitled to have them as they were represented when his property was conveyed to Walenta.

The only remaining question relates to the jurisdiction of a court of equity, and upon this we entertain no doubt. The evidence shows a threatened nuisance, tending to deprive appellee and others of the full and free use of this street, as he is entitled to have it used, and this is a well recognized ground for equitable interposition. 2 Story's Equity Jurisprudence, § 927; *Corning* v. *Lowrie,* 6 Johns. Ch. 439; *Rowan's Ex.* v. *Town of Portland,* 8 B. Monr. 232; *Hills* v. *Miller,* 3 Paige, 254.

We see no cause to disturb the decree below, and it is therefore affirmed.

*Decree affirmed.*