## MARIA EARLL

### *v.*

## THE CITY OF CHICAGO *et al.*

### *Filed at Ottawa January 22, 1891.*

1. TOWN PLAT— *acknowledgment—by attorney in fact.* Under the Revised Statutes of 1845, in force prior to the revision of 1874, a plat of land laid out into lots, streets, etc., was required to be acknowledged by the proprietor of the land, and could not be acknowledged by an attorney in fact.

2. DEDICATION— *by plat, prior to 1874—acknowledgment by attorney in fact—whether the fee passed.* The acknowledgment of a town plat by an attorney in fact of the owner of the land, made between 1845 and 1874, will not, under the law then in force, operate to vest the legal title of the streets shown by such plat. Such plat and acknowledgment thereof will not operate as a statutory dedication of the streets.

3. SAME— *sale of lots with reference to plat not properly acknowledged —estoppel—common law dedication.* Although a town plat, or plat of an addition, has not been properly acknowledged, yet if the owner of the land so platted makes sales of lots with reference to such plat, abutting upon what is marked as a street, he, and those claiming through him, will be estopped from questioning the existence of the streets as shown on the plat. Such acts will create a common law dedication of the streets.

4. Such sale of lots by the plat confers upon the purchasers the right to have the street therein described, and upon which their lots abut, remain open forever; and such right is not a mere right that the purchasers may use the street, but is a right vested in the purchaser that all persons may use it.

5. The sale and conveyance of lots according to a plat of an addition to a town or city, though the plat be defectively acknowledged, imply a grant or covenant to the purchasers and their grantees that the public streets indicated upon the plat shall be forever open to the use of the public as a public highway, free from all claim or interference of the proprietor, or those claiming under him, inconsistent with such use, and that the owner, and all claiming under him, will be perpetually estopped from denying the existence of the street.

6. SAME—*dedication failing in part—good as to the residue.* Where the owner of lots makes sales thereof with reference to a plat showing a public street sixty-six feet in width, upon which they abut, he having the title to but half of such street when he makes such sales, so that the dedication of thirty-three feet of the street fails, the dedication will be good as to the other half of the street, and neither he nor those claiming under him will have the right to close or obstruct such street. The dedication will hold good so far as he had power to make it.

7. STREETS—*obstruction—right of private action.* A person who owns a lot sold with reference to a plat, which shows a street fronting the lot, has such a private right and interest in the street as will entitle him to maintain a bill to enjoin the closing or obstructing of the same.

8. Where there is a special trust in favor of an adjoining property holder, or a special injury, a bill or suit may be maintained by an individual in respect to a public street or highway.

9. CHANCERY—*decree pro confesso—opening decree for an answer.* On bill against a city to quiet title to land claimed as a public street, a decree *pro confesso* against the city may, in view of public interests involved, be opened or set aside, and an answer may be allowed to be filed. In such case it is matter of sound discretion to allow the city to defend after its default has been entered.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. JONES & HACKER, for the appellant:

Acceptance is necessary to a dedication of a street. The recording of a plat, properly acknowledged, passes the fee to the streets, *eo instanti,* to the city. *Trustees* v. *Haven,* 11 Ill. 554; *Manly* v. *Gibson,* 13 id. 308.

If there was only a common law dedication, the land will revert to the owners of property adjacent and opposite the lands vacated. *Gebhardt* v. *Reeves*, 75 Ill. 301; *Hamilton* v. *Railroad Co.* 124 id. 235; *St. John* v. *Quitzow*, 72 id. 334.

To constitute a dedication there must be an acceptance. (*Littler* v. *City of Lincoln*, 106 Ill. 353.) And this must be within a reasonable time. *Lake View* v. *Le Bahn*, 120 Ill. 92.

The public may lose its right by non-user. *Lewiston* v. *Proctor*, 27 Ill. 414; *Peoria* v. *Johnston*, 56 id. 51; *Railway Co.* v. *Joliet*, 79 id. 25.

A mere user for a short time does not make a street. *Kelly* v. *Chicago*, 48 Ill. 388; *Herhold* v. *Chicago*, 108 id. 467; *Peyton* v. *Shaw*, 15 Ill. App. 192.

Messrs. KERR & BARR, for the appellee Jackson:

The plat was not properly acknowledged. *Gosselin* v. *Chicago*, 103 Ill. 623.

If the plat was a common law dedication, the deeds conveyed the fee in the street to the center, burdened with the public easement. *Gebhardt* v. *Reeves*, 75 Ill. 301; *Hamilton* v. *Railroad Co.* 124 id. 235.

Ogden made the plat, and subsequently made deeds of the lots on the south side of Wilcox avenue, and described the land as lots in block 10, of Rockwell's addition to Chicago. This would amount to an adoption of the plat, and the lots having been conveyed, and shown as abutting on Wilcox avenue, Ogden and his heirs and trustees, and all claiming under him, would be perpetually estopped from closing up that portion of Wilcox avenue against the wishes or interests of any of Ogden's grantees of lots abutting on the street. *Morrison* v. *King*, 62 Ill. 30; *Smith* v. *Town of Flora*, 64 id. 93; *Zearing* v. *Raber*, 74 id. 409; *Gridley* v. *Hopkins*, 84 id. 528; *Maywood Co.* v. *Village of Maywood*, 118 id. 61; *Lake View* v. *Le Bahn*, 120 id. 92; *Rees* v. *City*, 38 id. 337.

Mr. JUSTICE BAKER delivered the opinion of the Court:

On the third day of May, 1854, William B. Ogden was the owner, in his individual right, of eighty acres of land lying on the west side of the city of Chicago, and some three miles west of Lake Michigan, except about three acres thereof, which he had theretofore conveyed, by metes and bounds, to one Potwin. He was also the owner, jointly with one Rockwell, of eighty acres of adjoining land. His brother, Mahlon D. Ogden, was his agent and attorney in fact. On the day mentioned, the one hundred and sixty acres were subdivided into lots, blocks, streets and alleys, and on the 18th day of July, 1854, a map or plat of such subdivision was filed for record, and the subdivision was called "Rockwell's addition to Chicago." The plat was acknowledged by Rockwell in person, and by Ogden by his said attorney in fact. A portion of the property was between Madison street on the north and Jackson street on the south, and between Robin's Road (now Western avenue) on the west and Cross (now Leavitt) street on the east. The plat also showed Wilcox street, sixty-six feet in width, running from Cross street to Robin's Road, its course being east and west, and it being parallel to Madison street.

About the year 1867 the city of Chicago extended and opened Monroe street and Adams street through said land, both parallel to said Wilcox street, the former about one hundred and eighteen feet north of the north line of Wilcox street, and the latter about two hundred and thirteen feet south of said street. Monroe and Adams streets have ever since been used as leading public thoroughfares, and have been graded and paved. In 1868 the city laid out Oakley avenue through the land, and it runs east of Western avenue and west of Leavitt street, and it has been graded and paved. In 1867 there was only one house on the land now bounded by Monroe and Adams streets and Western and Oakley avenues, and that house fronted west on Western avenue, and was south of Wil-

cox street. The remainder of said land was open prairie. About 1869 a church building was placed on the south-east corner of Monroe street and Western avenue, and it stood immediately north of Wilcox street as platted. In 1872 an addition was made to this church, which extended south, and covered the north thirty-three feet of Wilcox street, that being one-half of the width of said street as laid out.

It appears that the three acres of land which William B. Ogden had sold and conveyed to Potwin prior to the making of the plat of 1854, included ground which extended south as far as the center of what was designated on said plat as Wilcox street, so that, as Ogden could not dedicate to public use land which he had already parted with, Wilcox street west from Oakley avenue, and running towards Western avenue, and for the distance that said Potwin land extended along said street, was necessarily reduced to a width of thirty-three feet. In 1875 or 1876 Potwin constructed several houses at the corner of Monroe street and Oakley avenue, and fronting north on Monroe street, and the out-houses and fences connected with said houses run back to the middle of Wilcox street as platted. At the date of the hearing of this cause eighteen houses had been built in the block, and fronting north on Monroe street, and the fences, etc., connected therewith extending back to the center of the platted Wilcox street. At the west end of the block a new brick church was built, in 1884, at the corner of Monroe street and Western avenue, and the old frame building was moved to the south half of Wilcox street. The lot just east of and adjoining the church lot, and fronting on Monroe street, is now occupied as a residence, and is enclosed by a fence, which runs back to the south line of Wilcox street. So the whole width of Wilcox street, immediately east from Western avenue, is now occupied by the church buildings and the premises connected with the adjoining residence fronting on Monroe street.

Prior to 1867 a slough extended south from Madison street and diagonally intersected Wilcox street about two hundred feet east of Western avenue. This slough has since been partially filled with rubbish, but where it crosses Wilcox street it still has some water standing in it in rainy seasons. Wilcox street, between Oakley and Western avenues, has never been filled, graded or paved by the city, and there have never been either sidewalks or lamp-posts thereon. Since 1877 wagons have been driven, as occasion required, over the south thirty-three feet of said street, from Oakley avenue and as far westerly as the church property, delivering groceries, coal, etc., to the abutting lot owners upon either side of the street, and for the purpose of removing garbage and ashes.

It appears that in 1856 and 1859 William B. Ogden sold and conveyed lots 1, 4, 5, 8 and 9, block 10, in "Rockwell's addition to Chicago," which lots included all of the land lying south of Wilcox street and north of Jackson street, between Oakley avenue and Western avenue; that by various *mesne* conveyances the title to the east half of that portion of said lot 4 which lies on the north side of Adams street and runs through to Wilcox street became vested in Jerome B. Jackson, the father of Willis G. Jackson, one of the appellees herein; that by certain partition proceedings since the death of Jerome B., the title to the west twenty-five feet of said east half became vested in said appellee, and that in 1886 said appellee erected a brick and stone house thereon, which he has since occupied as a residence.

Maria Earll, the appellant, is the owner in fee, by *mesne* conveyances from William B. Ogden, of lot 1, in the second re-subdivision of lots 8, 9 and 10, in block 10, of Rockwell's addition to Chicago. Said lot fronts on Oakley avenue, is one hundred and ten feet deep, and is at the south-west corner of said avenue and the Wilcox street in question. Her immediate grantor was one Albert G. Cone, who, in 1887, made to her a warranty deed therefor. Said Cone also made to her

a quitclaim deed for that part of the original lots 8 and 9, in said block 10, lying immediately north of and adjoining said lot 1, fronting east, and being thirty-three feet front on Oakley avenue, and running back in a westerly direction, of a uniform width, one hundred and ten feet. Her executors and trustees, under the will of William B. Ogden, deceased, also made a quitclaim deed, in 1887, to appellant, for the parcel of land last mentioned. Said parcel of land so quitclaimed is the south half, in width, of Wilcox street, as it was originally platted, from the west line of its intersection with Oakley avenue, to a line one hundred and ten feet west. In the fall of 1887 appellant went into the actual possession and occupation of the house on lot 1, and erected a fence along Oakley avenue, in front of the thirty-three feet of ground quitclaimed to her.

This controversy grows out of a bill filed by the appellant, against the city of Chicago and others, for the purpose of establishing her title to said piece of ground fronting thirty-three feet on Oakley avenue and running back, of a uniform width, in a westerly direction, one hundred and ten feet. Such proceedings were had in the cause as that the appellee Jackson, upon his own petition, was allowed to answer and make defense to the original bill, and was also permitted to prosecute a cross-bill or cross-petition, the prayers of which were, that the quitclaim deeds to the thirty-three feet of land should be set aside, appellant required to remove her fence, the land declared to be a part of Wilcox street, appellee declared to have a perpetual easement therein as a part of such street, and appellant perpetually enjoined from enclosing or obstructing, or claiming ownership in, said piece of ground.

The cause was heard upon the petition and cross-petition, and answers thereto, and replications to said answers, and evidence. A decree was entered dismissing the petition of appellant for want of equity, and granting relief to appellee in accordance with the prayers of the cross-petition, and from that decree this appeal was prosecuted.

Appellant claims that the dedication of 1854 was a statutory dedication, the effect of which is to pass to the municipality, upon acceptance, the fee of the street, in trust for public purposes; that there has never been any acceptance of Wilcox street; that the city of Chicago has abandoned the right and the intention of using the land as a street; that in consequence thereof, either the fee never vested in the city, or, upon such abandonment, reverted to William B. Ogden, the owner at the time of platting, and that, in either of said events, the fee passed to her by the conveyance from the executors and trustees of said Ogden. In the view we have of the case it is not very material whether the plat of Rockwell's addition was a statutory or a common law dedication. It is plain, however, that the dedication was a common law and not a statutory dedication. The statute in regard to plats was revised and amended in 1874. (Rev. Stat. chap. 109.) Prior thereto, the sections from 17 to 21, both inclusive, of chapter 25, division 1, of the Revised Statutes of 1845, page 172, were in force. Said sections were a mere re-enactment of the first five sections of "An act providing for the recording of town plats," in force February 27, 1833. (Rev. Laws, 1833, p. 599.) In *Gosselin* v. *City of Chicago*, 103 Ill. 623, it was held, that by the act of 1833 a plat of land laid out into lots, streets, etc., was required to be acknowledged by the proprietor of the land, and could not be acknowledged by an attorney in fact. It was also there held, that while a plat acknowledged by an attorney in fact did not, under that act, vest the legal title of the streets in the municipal corporation, yet if the owner of the land had made sales of lots, he would be estopped from questioning the existence of the streets, and such acts would be a common law dedication of the streets. Here, the plat, made while substantially the same statutory provisions were in force, was not acknowledged by the proprietor of the land, but by Mahlon D. Ogden, his agent and attorney in fact. Here, also, there were numerous sales by the proprietor of lots designated on

the plat.   He deeded to others all the land on the south side
of Wilcox street, between Oakley and Western avenues, and
thereby conveyed the fee of the south half of Wilcox street,
between said avenues, burdened with the easement in favor of
the public.   It results that appellant took nothing by the deed
that the executors and trustees of Ogden made to her.

Appellant claims, that if it be held that there was no statu-
tory dedication, but a common law dedication, of Wilcox street,
then, since she is the owner, as grantee, under the original
proprietor, of one hundred and ten feet of the adjacent prop-
erty on the south, the title of the thirty-three feet in question,
from Oakley avenue west for a distance of one hundred and
ten feet, is vested in her, and the city having neglected and
refused to accept, or having abandoned, the street dedicated,
she is entitled to possession.   To make a complete dedication
of a street, so as to bind the municipality to keep it in repair,
there must be an acceptance.   (*Littler* v. *City of Lincoln,* 106
Ill. 353; *Hamilton et al.* v. *Chicago, Burlington and Quincy
Railroad Co.* 124 id. 235.)   In both of the cases cited, the
announcement of the principle that there must be an accept-
ance of the street as a public highway, is qualified by the
statement that the owner is estopped to deny the dedication
whenever private rights intervene.   In the latter case it is
also said that there may well be private rights, in respect to
streets, in grantees of conveyances made under the plat, al-
though there may have been no complete dedication of the
streets to the public by an acceptance of the proffered dedica-
tion.   In *Zearing* v. *Raber,* 74 Ill. 409, this court said: "It
is unimportant whether the public have so far accepted the
dedication as to be bound to keep the street in repair, since
the question involved is simply one of private right."   The
doctrine of that case, and of *Gridley* v. *Hopkins,* 84 Ill. 528,
*Maywood Co.* v. *Village of Maywood,* 118 id. 61, *Smith et al.*
v. *Town of Flora,* 64 id. 93, and of numerous other cases, and
of the common law, is, that if the owner of land exhibits a

map or plan of a town, or addition platted thereon, and on which a street is defined, and sells lots abutting on such street, and with clear reference to the plat exhibited, then the purchasers of such lots have a right to have that street remain open forever; and such right is not a mere right that the purchaser may use that street, but is a right vesting in the purchasers that all persons may use it,—that the sale and conveyance of lots according to the plat imply a grant or covenant to the purchasers of lots, and their grantees, that the public street indicated upon the plat shall be forever open to the use of the public as a public highway, free from all claim or interference of the proprietor, or those claiming under him, inconsistent with such use, and that the owner, and all claiming under him, will be perpetually estopped from denying the existence of the street.

The premises of appellee abut, on the north, on Wilcox street as platted, and appellant's lot 1 abuts, for a distance of one hundred and ten feet, on the same street, and said lot lies between the premises first mentioned and Oakley avenue, and both parties are remote grantees of Ogden, through deeds made by him subsequent to the platting of Rockwell's addition, and in which deeds the lands conveyed were described as lots in block 10 of said addition. It follows, from the rules of law which we have above stated, that appellant is estopped from claiming that Wilcox street is not a public highway, and from closing up that portion of the street that is contiguous to her lot, against the wishes and interests of said appellee.

If we should assume that an acceptance of the street by the city or the public was essential, (which we can not properly do under the circumstances of the particular case,) yet we find that the trial court found, in its decree, "that said Wilcox street, and especially the said eastern portion thereof, has been used by the public, and by the owners of lots abutting thereupon, from the time of said dedication down to the time of the erection of a fence across the same by said Maria Earll,

about the time of filing said original petition, and that said use has been free, unrestricted and unquestioned, and has been such as the need of the public and such abutting lots required." The evidence sufficiently sustains these findings. The proof shows that since the dedication of the street no taxes have been assessed against the south thirty-three feet thereof adjacent to the west side of Oakley avenue; that when said avenue, between Monroe and Adams streets, was paved by special assessments, no portion of the cost of such improvement was assessed against said thirty-three feet as private property; that when said paving was done the curb was turned at the intersection of Wilcox, the same as at any street crossing; that the city has for many years used said thirty-three feet in removing garbage from garbage boxes placed thereon, and connected with houses and premises contiguous thereto; that the same has been used in delivering groceries, coal, etc., to said several premises, and that teams are driven thereon more or less every day, and as occasion requires, by anybody who wishes so to do.

It is suggested, however, that the offer of Ogden was to dedicate a street sixty-six feet wide, and extending from Western avenue to Cross or Leavitt street; that the acceptance must be of a street as offered and intended, and that the conversion of the street into an alley or way only thirty-three feet wide, and running only part way from Oakley avenue to Western avenue, is a perversion of the gift. Ogden assumed to dedicate a street sixty-sixty feet wide, but prior thereto he had already sold and conveyed to another the north half of such street, for a part of the distance between Western avenue and Leavitt street. The dedication, therefore, necessarily, could not become effective to the full extent contemplated; but because the public was deprived of a part of that which was offered them, and the grantees of lots from Ogden deprived of a part of that which was promised when they made their purchases, it does not follow, either in law or in morals, that the

remaining thirty-three feet, in width, of the street, should be wrested from them. Because such grantees have had the "coat" taken away from them, is no sufficient reason for depriving them of the "cloak," also. So, also, even if the Western Avenue Church, and the owner of the adjoining lot fronting on Monroe street, have built upon and fenced up the whole width of Wilcox street adjacent to said avenue, whether rightfully or wrongfully, it does not justify appellant in depriving appellee Jackson, and other owners of lots that abut on Wilcox street, and the public, of the "blind alley" which is left to them, since such alley will afford at least a means of ingress and egress in one direction.

It follows from what we have already said, that appellee Jackson has such private right and interest in respect to Wilcox street as entitles him to prosecute his cross-petition filed herein, and that there was no error in denying the motion of appellant to dismiss such cross-petition. Where there is a special trust in favor of an adjoining property holder, or a special injury, a bill or suit may be maintained by an individual in respect to a public street or highway. *City of Chicago* v. *Union Building Association*, 102 Ill. 379; *McDonald* v. *English*, 85 id. 232; *Ottawa Gaslight Co.* v. *Thompson*, 39 id. 598.

It was a matter of sound discretion with the Superior Court, upon the opening up of the cause, to allow the city of Chicago, notwithstanding the decree *pro confesso* upon the original bill or petition theretofore entered against it, to file an answer thereto. In view of the fiduciary relationship of the city to the subject matter of the suit and of the public interests involved, it was manifestly just, right and proper so to do.

Various other matters and things are discussed in the briefs and arguments. They have been duly considered, but we do not deem it necessary to here refer to them in detail.

We find no error in the record. The decree is affirmed.

*Decree affirmed.*