PARKER R. MASON *et al. v.* THE CITY OF CHICAGO *et al.*

and

PETER N. KOHLSAAT *et al. v.* THE CITY OF CHICAGO *et al.*

*Filed at Ottawa November 9, 1896.*

1. JUDGMENT—*res judicata binding upon town is binding on city to which town is annexed.* A judgment in ejectment against a town which claimed title in fee by dedication to a strip of land as a street, will preclude a city to which such town is subsequently annexed from claiming to be the owner in fee of such land, as against the other parties thereto.

2. DEDICATION—*not established where evidence is doubtful.* Dedication is not established where the evidence, in all its bearings, tends only to prove the lack of any settled, definite purpose on the part of the owner of the land.

3. SAME —*making plat showing street is not of itself a dedication.* A land owner does not make a dedication at common law simply by dividing and platting his land to show streets, in a manner insufficient to establish a statutory dedication, so long as he retains control of it, and does not, by the sale of lots with reference to it as open public ground or a street, estop himself.

4. SAME—*acts of ownership over platted property rebut dedication.* A setting apart of streets running to the water's edge, and their appropriation and improvement, through a strip along the shore, does not constitute a dedication by the owner and an acceptance

by the public authorities of such strip, where such strip has been kept fenced and used by such owner and his grantees for private purposes.

5. SAME—*sale of lots according to plat—when not an estoppel.* A sale of lots according to a plat showing streets will not estop the owner from asserting that a strip opposite a different block from that in which such lots are situated was not a street, where full access to such lots is given by the streets actually opened.

6. ESTOPPEL—*when representations of vendor as to street do not work estoppel.* Representations made to a proposed purchaser of land that a strip along the shore in front of such land is a public street will not estop the vendor from asserting that such land is not a street, where such purchaser does not purchase it, but purchases other lots in different blocks.

7. LACHES—*effect of vendee's slumbering upon his rights.* Purchasers of lots according to a plat, who stand by for more than twenty years and see a strip enclosed, appropriated and used as private property by their vendor and others claiming under him, are guilty of such *laches* as will prevent their claiming such strip· to be intended as a street or way for their benefit.

APPEAL from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

On the 25th day of December, 1884, the town of Lake View, since included as a part of the city of Chicago, filed its bill in chancery against appellants, alleging that Elisha E. Hundley, by his plat of what was designated as Hundley's subdivision of a tract therein described, dedicated· the certain strip of land in question in this case as a public street or highway; that the defendants had entered into possession of that strip under claim of ownership and excluded the public therefrom, and were then engaged in carting and removing sand and gravel from the premises. The bill prayed for an accounting and injunction. It was afterward amended, and was answered by defendants denying the alleged dedication and admitting that they had excluded the public from said strip of land, setting up as a defense the Statute of Limitations and *laches,* and the final judgment in their favor rendered in an action of ejectment brought by said complainant to recover said strip. Afterward, on December

22, 1888, appellants and others filed their bill in chancery against the city of Lake View and Sanders, its commissioner of public works, alleging that complainants were the owners of the said strip of land, and that the said strip had never been dedicated to the public for any purpose, and that the city of Lake View and its said commissioner were threatening to remove complainants'.fences and improvements from the strip and to devote the land which belonged to them to the uses of the public, praying that the defendants be enjoined from so doing. Answer was filed to this bill, and on the 5th of February, 1892, the city of Chicago, as successor to the town of Lake View, filed its cross-bill against appellants, alleging that Hundley, by his plat of said subdivision, dedicated the strip of land in question to the public, and that the town of Lake View accepted the dedication, and praying the same relief as is prayed in the bill of the town of Lake View. On the same day James Payne and some twenty others, by leave of court, intervened and became parties to the said bill filed by appellants, and filed their answers and cross-bills therein, alleging that they were, respectively, owners and in possession of certain lots and premises situated in said re-subdivision, and as such owners were interested in said litigation and in having said strip of land in controversy kept open, and alleging that said Hundley, by his said plat and by his acts and declarations, intended to and did dedicate the said strip of land to the use and benefit of the public as a street, driveway, highway or public ground, so far as the owners of said subdivision were concerned, and that they had a peculiar and special interest in maintaining said strip as devoted to such uses. They further alleged that on December 3, 1872, said Hundley executed and delivered a deed to Parker R. Mason, one of the appellants, conveying all the riparian rights which he had in front of lots 1 to 21 and 33 to 37 in Pine Grove, the subdivision previously made, and the said Mason, and others claim-

ing under him, were claiming to own the land east of
said lots and to have the absolute right to control and
dispose of the sand and soil thereof, and that the said
lot owners in said re-subdivision had no right or interest
therein.     They also alleged that after the death of Hund-
ley the executors of his will, by their deed, purported to
convey all the interest of themselves and the said Hund-
ley to the land lying between the east line of lots from 4
to 11, in block 7, in said subdivision, and Lake Michigan,
to the wife of said Mason, which deed was made October
13, 1882.     The cross-bill also alleged that for twenty
years or more said Hundley had abandoned all claim of
ownership to said strip in its entire length and breadth,
and recognized the same to be devoted to the uses and
benefits of the public, and represented said lots to be
fronting upon said strip of land as devoted to the uses
aforesaid.     The cross-bills further alleged that said deeds
tended to create a cloud on the title and rights of the
complainants, and that the property owned by them,
respectively, was purchased directly from said Hundley,
and that it was part of the consideration that said strip
of land was and always should be open to the uses and
purposes aforesaid, prayed for cancellation of the deeds
aforesaid, and that the defendants be restrained from
selling or hauling away sand and gravel and committing
waste thereon, etc.     Answers and replications were filed,
and upon the hearing of both bills before the same chan-
cellor at the same time, one Levi W. Yaggy, who testified
as a witness, claimed to be the owner and in possession
of lots 1 and 2, in block 7, fronting upon the strip of land
in question, and was made defendant, and adopted as his
own the answer and cross-bill of said Payne and others.

It appeared that in February, 1853, Elisha E. Hundley
made a plat of certain lands of which he was the owner,
and which included the strip in controversy, under the
name of Pine Grove, the following being a copy of that
plat:

Afterward, on October 24, 1855, said Hundley, as the owner of lots 3 to 21 and 33 to 37 in said subdivision, re-subdivided the same, and made, acknowledged and recorded the plat of said re-subdivision, upon which this controversy has arisen, and which is as follows:

MASON *v.* CITY OF CHICAGO.

[163 Ill.

Upon the final hearing of the two cases the court found the equities in favor of the city of Chicago and the said property owners, and against appellants, and that the strip of land in question had been dedicated to the public as a street or highway, and had been duly accepted as such by the proper authorities, and sustained also the cross-bills of the individual property owners. A separate decree was rendered in each case, and in its findings covered the entire strip on the lake front, including that part in front of block 12 as well as the parts in front of blocks 6 and 7, but it was provided in the decrees, by consent, that they should not affect the part in front of block 12.    So much of said strip as lay between block 12 and Lake Michigan had been, in the case of *City of Chicago* v. *Drexel*, 141 Ill. 89, adjudged to be the private property of the said Drexel.    From these decrees Mason and Kohlsaat have prosecuted these appeals, and they have been taken and considered together.

JAMES E. MUNROE, for appellants:

Dedication, in law, is the act of devoting or giving property for some proper public object in such manner as to conclude the owner.    5 Am. & Eng. Ency. of Law, 395; *Hunter* v. *Sandy Hill*, 6 Hill, 411.

The plat of Hundley's subdivision was not made in accordance with the statute.    It, therefore, did not convey the fee in the lake shore strip, even if that strip was accepted, as it was not.    *Chicago* v. *Drexel*, 141 Ill. 89; Rev. Stat. 1845, chap. 25, secs. 17-21.

The judgment is a perpetual bar as to all claim of dedication and acceptance on or prior to July 30, 1884.    *Chicago* v. *Drexel*, 141 Ill. 89; *Chicago* v. *Wright*, 69 id. 322; *Dummer* v. *Jersey City*, 20 N. J. L. 86; *Methodist Church* v. *Hoboken*, 4 Vroom, 13; *Hoboken Co.* v. *Mayor*, 36 N. J. L. 543.

The recording of the plat of Hundley's subdivision was not, in itself, an offer to dedicate the lake shore strip to the public.    *Chicago* v. *Drexel*, 141 Ill. 89.

If it could be held that the plat of Hundley's sub-division included the lake shore strip as a part of the subdivided land, it was, at best, a mere offer to make a common law dedication of the strip to public use as a highway. *Trustees* v. *Walsh*, 57 Ill. 363; *Gould* v. *Howe*, 131 id. 496.

There can be no complete or irrevocable dedication until there is an acceptance. *Chicago* v. *Drexel*, 141 Ill. 89; *Princeton* v. *Templeton*, 71 id. 88; *Trustees* v. *Walsh*, 57 id. 370; *Grube* v. *Nichols*, 36 id. 96; *Littler* v. *Lincoln*, 106 id. 354; *Winnetka* v. *Prouty*, 107 id. 218; *Hamilton* v. *Railroad Co.* 124 id. 235.

To doubt is to decide against the alleged dedication. *Chicago* v. *Drexel*, 141 Ill. 89; *Bloomington* v. *Cemetery Ass.* 126 id. 221; *Grube* v. *Nichols*, 36 id. 96; *Trustees* v. *Walsh*, 57 id. 370; *Kyle* v. *Logan*, 87 id. 624; *Chicago* v. *Stinson*, 124 id. 510.

Acceptance of the highway charges the accepting municipality with the duty of keeping it in repair, and makes it liable for its non-performance. This duty and this responsibility cannot be forced upon it without its consent. *Chicago* v. *Drexel*, 141 Ill. 89; *Littler* v. *Lincoln*, 106 id. 369; *Gentleman* v. *Soule*, 32 id. 272; *Forbes* v. *Balenseifer*, 74 id. 187; *Insurance Co.* v. *Littlefield*, 67 id. 373; *Baker* v. *Johnson*, 21 Mich. 346; *Irving* v. *Ford*, 65 id. 249.

As acceptance fastens a burden upon the public, it must be proven by clear and positive evidence. *Littler* v. *Lincoln*, 106 Ill. 369; *Willey* v. *People*, 36 Ill. App. 610.

Acceptance is an actual taking of the property into the control or charge of the public authorities, or the adoption or control of it as a highway or public ground. *Chicago* v. *Drexel*, 141 Ill. 89; *Bushnell* v. *Scott*, 21 Wis. 462; *Speir* v. *Town*, 121 N. Y. 429; *Blodgett* v. *Town*, 14 Vt. 295; *Cass County* v. *Banks*, 44 Mich. 446.

When the offer to dedicate is by recording a plat made in accordance with the statute, it may be withdrawn before acceptance by a deed of vacation made as provided

by the statute, and, apparently, only in that way. *Littler* v. *Lincoln*, 106 Ill. 353; *Pressed Brick Co.* v. *Chicago*, 138 id. 628; *Hamilton* v. *Railroad Co.* 124 id. 244.

EDWARD ROBY, also for appellants.

ADOLPH KRAUS, SIGMUND ZEISLER, and HERVEY H. ANDERSON, for appellees:

Dedication may be shown by grant, or acts or conduct of the owners, coupled with an acceptance by the public. The declarations of the owner are competent evidence. *Peterson* v. *Reed*, 111 Ill. 169.

If the acts of the party indicate an intention to dedicate the land to a public use, it is sufficient; and if the dedication is accepted by the public, as by use and travel, it is complete. *Wragg* v. *Penn Township*, 94 Ill. 25.

Dedication may be inferred from long and uninterrupted user, with knowledge or consent of the owner. *McKay* v. *Hedburg*, 134 U. S. 84; *Smith* v. *Flora*, 64 Ill. 93; *Chicago* v. *Wright*, 69 id. 32; *Dimon* v. *People*, 17 id. 422.

Dedication may occur and be inferred from acts occurring on a single day. *Henry* v. *Sandy Hill*, 6 Hill, 413.

When intention to dedicate is established, the length of public use is not important. *Marcy* v. *Taylor*, 19 Ill. 636; *Rees* v. *Chicago*, 38 id. 337.

The extent of the dedication cannot be limited by evidence that the ground was unfit for immediate use. *Lake View* v. *LeBahn*, 120 Ill. 92; *Rowen* v. *Portland*, 8 B. Mon. 350.

Where the proprietor sells lots abutting on a street with reference to the plat, he is estopped to deny both dedication and acceptance; and the sale and conveyance imply a grant or covenant that the street shall forever be open to the use of the public. *Earll* v. *Chicago*, 136 Ill. 277; *Gundville* v. *Jemsen*, 84 Mich. 66.

A right by prescription cannot be raised against the consent of the owner, but the use may be so long unobjected to as to authorize the finding of an implied consent,—even of a grant. *Warren* v. *Jacksonville*, 15 Ill. 211.

The fencing out of a strip of land by the owner affords strong evidence it was left out for a street, and, without countervailing evidence, might be accepted as satisfactory proof of its dedication. *Chicago* v. *Hill*, 124 Ill. 646.

An acceptance after a lapse of many years may well be presumed. *DesMoines* v. *Hall*, 24 Iowa, 234; *Jennings* v. *Inhabitants*, 5 Gray, 73.

When no statutory method of acceptance is pointed out, it is usually, if not always, proved by public use and enjoyment. *Marcy* v. *Taylor*, 19 Ill. 636; *Green* v. *Oaks*, 17 id. 251; *Forbes* v. *Balenseifer*, 74 id. 186.

When control of a way has been assumed by the authorities representing the public corporation an acceptance will be implied. Elliot on Roads, 115.

Upon a question as to the acceptance by the public of the dedication, evidence that the land was not assessed as private property for taxation is admissible, as tending to show an acceptance. *Lee* v. *Mound Station*, 118 Ill. 504; *Earll* v. *Chicago*, 136 id. 277.

Acceptance of a street will be presumed from slight incidents, if beneficial. *Mann* v. *Elgin*, 24 Ill. App. 419.

Because an alley is seldom used is no reason why it is not a public alley. *Hatton* v. *Chatham*, 24 Ill. App. 622.

The municipality has a discretion as to the time within which it shall open and improve streets dedicated. Every street or square may not be accepted at once. *Lake View* v. *LeBahn*, 120 Ill. 103; *Shea* v. *Ottawa*, 62 Iowa, 39; *Aaron* v. *Louisville*, 78 Ky. 628; *Lee* v. *Mound Station*, 118 Ill. 360; *Rowen* v. *Portland*, 8 B. Mon. 250; *Mayor* v. *Canal Co.* 1 Beas. 547; *Henshaw* v. *Hunting*, 1 Gray, 203.

The doctrine of estoppel, as applied to municipal corporations, implies more than *laches*, neglect or non-action of officers, but is dependent upon affirmative acts of such officers. *Railroad Co.* v. *Joliet*, 79 Ill. 25; *Peoria* v. *Johnson*, 56 id. 51; *Logan County* v. *Lincoln*, 81 id. 158; *Alton* v. *Transportation Co.* 12 id. 38; 2 Dillon on Mun. Corp. 532, 533.

Mr. JUSTICE CARTER delivered the opinion of the court:

It was determined in *City of Chicago* v. *Drexel*, 141 Ill. 89, that the plat of October 24, 1855, involved in that as well as in this case, was not in conformity with the statute, and did not operate as a statutory dedication or conveyance to the public, or to any municipality, of the strip of land lying between the east line of blocks 6, 7 and 12 and Lake Michigan. We are satisfied with that decision and the reasons given in the opinion in that case, and see no reason for further discussion of that question. Even if the fee had been vested in the town of Lake View by the plat, it is clear, as there shown, that the judgment rendered for the defendants, appellants here, in the ejectment suit brought by the town before it was united with Chicago, claiming title in fee, would preclude the city of Chicago from now claiming to be the owner in fee of said land.

The question chiefly argued and pressed upon our attention by counsel on both sides is, was there, or not, a dedication as at common law of said strip of land by Hundley, evidenced by the making and recording of the plat and by his contemporaneous and subsequent acts and declarations? Only so much of said strip as lies bebetween block 12 and the lake was involved in that case, but the evidence there, as here, related to the entire strip, and it was held that the evidence was not sufficient to show, with sufficient certainty and clearness, either any intention on the part of Hundley to make such dedication or any acceptance on the part of the public or of the town.

We have carefully examined and considered the evidence, and while it is claimed on the part of the appellee that a stronger case was here made by the city in the court below than was made in the *Drexel case*, we are unable to see that it is sufficient to establish the dedication claimed, and have arrived at the same conclusion

reached in that case, so far as the rights of the public or of the city are concerned, to so much of said strip as lies between blocks 6 and 7 and Lake Michigan, and not included within the boundaries of the east and west streets extended to the water's edge, called, beginning at the north end, respectively, Grace, Nellie and Addison streets.

The claim of Payne, Yaggy and others, individual property owners in said re-subdivision, that they purchased their respective lots by the plan and plat laid out and adopted by Hundley, showing this and other strips of land left open for streets, highways and public ground, and upon representations made by him and his agents that said strips were so intended, and that said Hundley and all claiming through or under him are estopped from denying such dedication, so far, at least, as the rights of said property owners are concerned, presents a question which was not involved in the *Drexel case.* But from the view we have taken of the case this claim is not sustained by the evidence,—at least no further than as it may affect said east and west streets mentioned in the record as Grace, Nellie, Addison and Cornelia streets. These streets, while not specified on the plat as streets nor designated by name so as to make a sufficient statutory dedication, were so laid out as to correspond at their western termini with what were already public streets known, respectively, by the names above mentioned, and apparently intended as extensions of such streets throughout the re-subdivision, and were, with what are now called Evanston and Pine Grove avenues, intersecting them at right angles and extending through said subdivision, treated by Hundley, not only as shown by the plat but by his subsequent acts, as public streets, and were accepted, improved and used as such by the public. It is true, there is no contention as to these cross streets except as to whether they end in a *cul-de-sac* at the western line of the land in controversy or extend through

the same to the water's edge. In truth, it is not so much contended by appellee that these streets extend to the water's edge, as that, by their connection with the strip in controversy lying between the water's edge and what by the plat appears to be their eastern termini, it is made to appear that by the making and recording of the plat they are stamped with the same character of public ground. So far as appears from the face of the plat itself, this would seem to be true, except, perhaps, as to Grace street, where the center line appears to have been extended to the lake; but in considering whether or not there has been a common law dedication, or whether or not, as to the individual property owners who claim to have purchased by the plat, appellants are estopped from denying that the strips in question are streets or public grounds, under the issues many facts and circumstances shown by the evidence must also be considered in connection with the plat.

Wilson, who seems to have been connected officially with the town of Lake View since 1870, part of the time as town clerk, testified that by the direction of the town board he graded and improved Grace street to the lake, and in doing so deposited the refuse sand and other material on this open strip in front of block 6; that the work was done in 1870 or 1871, and that Hundley then claimed the land where witness deposited the sand in front of block 6 as belonging to him, and threatened to sue Wilson. As we understand the testimony of this witness, Hundley did not complain of the improvement of Grace street, but of the placing of the excavated material on his land in front of block 6. Hundley's position in this respect is better established by his acts, which are clearly proved, in dealing with the land, than by the testimony of witnesses as to what he said so many years ago. About the time mentioned by Wilson, Hundley built a fence upon the strip in controversy along the south side of Grace street, and extended it one hundred and seventy-five

feet east of the east line of the block to a point not far short of the water's edge, and thence southerly about one hundred and forty feet. He also built a sidewalk on the south side of Grace street across this strip, outside of this fence and extending more than one hundred feet toward the lake. This fence and sidewalk were never removed, but still remain. This was, of course, many years after the plat was made, but there is not sufficient evidence in the record to show that Hundley had previously dedicated this strip to the public, or, if he had that intention when the plat was made, that his offered dedication had been accepted. Some, perhaps the larger number, of the witnesses testify that following the making of the plat he said he intended that there should be a public street along there, while some say he said he intended it for the abutting property owners fronting on the lake, to be improved and beautified for their use and benefit. The latter view is more consistent with the acts of all parties in interest than is the former; yet the evidence, when considered in all its bearings, tends to prove rather the lack of any settled, definite purpose on the part of Hundley in this regard than otherwise. Counsel for appellee ask, why would he make and record a plat with lots fronting upon this strip if he did not intend it as a street or highway, by means of which access might be had to such lots? And it is justly said that it could not well be supposed that he intended these lots to abut upon a piece of private property which might, after the lots were sold, be built upon or devoted to private use to the almost total destruction of the value and usefulness of the lots fronting upon it. Still, it is not, nor can it be, claimed that simply by so dividing and platting his land, and in a manner insufficient to establish a statutory dedication, that act alone would amount to a dedication at common law. He might, of course, make such a plat and reserve the question of the use of the strip for future determination. He could devote it to public

uses, or, so long as he retained control of it and did not, by the sale of lots with reference to it as open public ground or as a street, estop himself, he could, in the absence of acceptance of it by the public, change his mind in dealing with it, even if he had originally intended to dedicate it as a public highway.

A part of the strip in question in front of block 7 was fenced in as early as 1862, and since 1871 Mason, one of the appellants, has been in possession of all that part of the strip in front of block 7, claiming to own it.   He fenced it in in 1872, and it has remained so fenced ever since, except that it was opened that year to allow the owners of property abutting on this strip to construct, at their own expense, a twenty-foot driveway, which driveway, after having been used for a short time, was washed away or covered with sand by the action of the waters and was abandoned and the fence restored.   The property owners abutting on this strip expended considerable sums of money in erecting piers on the margin of the lake, to prevent, and did thereby prevent, the encroachment of the lake upon much of the land in controversy as well as upon their lots, and by the same means the width of the strip was increased.   Some of these owners made other improvements by hauling and depositing black soil upon the sandy beach, by planting trees, sowing grass seed, and otherwise improving the land. Hundley, and after his death his executors, made deeds to several of the lot owners whose lots abutted on this strip, conveying to them all riparian rights in front of their property, and by other deeds purported to convey, in express terms, parts of the strip itself.   It is claimed by appellees that the fencing in of portions of the strip was not done under claim of ownership and in hostility to the claims of appellees, but to protect the lots of the lot owners from sand which the wind carried upon their premises, and to keep out intruders, who were in the habit of hauling away the sand and gravel, to be used

for building purposes, which was deposited on the beach of the lake. But this view is not, we think, established by the evidence, nor is it shown that the public had any rights to be thus invaded. If it had, it is somewhat strange that no action was taken for so many years by the town of Lake View or by any one representing the public interests, when the town had notice, as Wilson testifies, that Hundley was claiming the strip as his private property, and he, and those in privity with him, were in possession of it and devoting it to their own private uses. Nor was there any money expended or labor bestowed on behalf of the town or the public, in any way, upon the land in question, but under their several claims of ownership and possession the appellants, or some of them, and those with whom they were in privity, retained possession, improved parts of the land, and sold and removed large quantities of sand and gravel from other parts without hindrance, for more than twenty years. There was no traveled road there. It was, so far as it was unfenced and sufficiently level, used, to some extent, by the public in passing along the lake shore, but no more than any vacant and unoccupied land, similarly situated would be used. But it was not only proved without contradiction that it was Hundley's intention that the east and west streets above mentioned should be public streets through to the lake, as continuations of the streets with which they connected on the west, but it was proved, also, that they were kept open and used to the water's edge, and that sewers were laid and extended in some of them to the lake. It is worthy of notice, also, that in fencing in portions of the strip in question, neither Hundley, nor those succeeding him in interest, extended their fences across these streets. They were taken ·possession of by the public and used up to their connection with the lake,—itself a great public highway; and although it is said that, so far as indicated on the plat itself, there is no more evidence of an intention to

dedicate them to the public than the strip in controversy, still, in the lapse of time, they have been differently treated by all concerned, and it is now too late, we think, to regard them otherwise than as public streets to the water's edge. But we cannot regard the setting apart of them, and their appropriation and improvement through the strip in question, as sufficient evidence, when considered with the other evidence in the record, of a dedication by the owner and an acceptance thereof by the public authorities of the strip in question to public uses, so far as the land lies in front of blocks 6 and 7.

The evidence is voluminous, and no extended review of it can be here made, but it does not greatly differ from the facts presented in *City of Chicago* v. *Drexel*, *supra*, where the south end of the strip in front of block 12 was adjudged to be private property, except, as before said, in respect to the claims of individual property owners who are interested in having this strip declared to be a public street, and we are now brought to a more direct consideration of that branch of the case.

It is insisted that the law is, that where an owner sells and conveys lots according to a plat showing the subdivision of the land into blocks, lots and streets, there is an implied covenant with the purchaser that such streets shall remain open as public streets, independently of the question whether or not there has otherwise been a dedication of such streets to or an acceptance of them by the public, and that such purchasers have rights in such streets, which they may themselves enforce, to prevent their appropriation or obstruction, and that this principle is not limited in its application to the single street on which the lots so purchased are situated. *Zearing* v. *Raber*, 74 Ill. 409.

In *Earll* v. *City of Chicago*, 136 Ill. 277, in citing *Littler* v. *City of Lincoln*, 106 id. 353, and *Hamilton* v. *Chicago, Burlington and Quincy Railroad Co.* 124 id. 235, this court said (p. 285): "The announcement of the principle that there

must be an acceptance of the street as a public highway is qualified by the statement that the owner is estopped to deny the dedication whenever private rights intervene. In the latter case it is also said that there may well be private rights, in respect to streets, in grantees of conveyances made under the plat, although there may have been no complete dedication of the streets to the public by an acceptance of the proffered dedication. In *Zearing* v. *Raber*, 74 Ill. 409, this court said: 'It is unimportant whether the public have so far accepted the dedication as to be bound to keep the street in repair,-since the question involved is simply one of private right.' The doctrine of that case, and of *Gridley* v. *Hopkins*, 84 Ill. 528, *Maywood Co.* v. *Village of Maywood*, 118 id. 61, *Smith* v. *Town of Flora*, 64 id. 93, and of numerous other cases, and of the common law, is, that if the owner of land exhibits a map or plan of a town, or addition platted thereon, and on which a street is defined, and sells lots abutting on such street, and with clear reference to the plat exhibited, then the purchasers of such lots have a right to have that street remain open forever; and such right is not a mere right that the purchaser may use that street, but is a right vesting in the purchasers that all persons may use it,—that the sale and conveyance of lots according to the plat imply a grant or covenant to the purchasers of lots and their grantees, that the public street indicated upon the plat shall be forever open to the use of the public as a public highway, free from all claim or interference of the proprietor, or those claiming under him, inconsistent with such use, and that the owner, and all claiming under him, will be perpetually estopped from denying the existence of the street."

It is contended by appellants that this principle applies only to the purchasers of lots abutting or calling to bind on the particular street, and counsel cite *Hawley* v. *City of Baltimore*, 33 Md. 270, where it was, among other things, said: "The doctrine of implied covenants will not

be held to create a right of way over all the lands of a vendor which may lie, however remote, in the bed of a street. The lands must be contiguous to the lot sold, and there must be some point of limitation. The true doctrine is, as we understand it, that the purchaser of a lot calling to bind on a street not yet opened by the pub-lic authorities is entitled to a right of way over it, if it is of the lands of his vendor, to its full extent and dimensions only until it reaches some other street or public highway." Counsel cite also in support of this view, *Littler* v. *City of Lincoln,* 106 Ill. 353, *City of Chicago* v. *Union Building Ass.* 102 id. 379, *City of East St. Louis* v. *O'Flynn,* 119 id. 200, *Village of Winnetka* v. *Prouty,* 107 id. 218, *Chicago Pressed Brick Co.* v. *City of Chicago,* 138 id. 628, and other cases. The same question of fact arises, however, necessarily: was the strip in question defined as a street or public ground?

The point as applicable here, where Payne, Yaggy and others became parties, is, that all but Yaggy purchased lots which were not adjacent to the strip in question, but which abutted on streets from thence fully recognized as public streets and opened, improved and since maintained as such, and most of them more or less remote from this strip on the lake. Payne, who is the only one of the non-adjacent proprietors whose case deserves especial mention, owned lots 1, 2, 13 and 14, and the north half of lots 3 and 12, in block 11. Some of these lots abutted on Evanston and some on Pine Grove avenue, and from all there was free access to the lake by way of Addison street. He testified that he purchased these lots from Hundley through his agent, Rees, in 1868, and has lived there since 1870, and that when he first knew the property, in 1867, it was fenced into blocks; that he wanted to buy property running to the lake, and that he first tried to buy in block 7, but was informed by Rees that they were not offering that property as it did not go to the lake,—that there was a street interven-

163—24

ing; that Rees represented that this strip of land was a street; that he, witness, then tried to buy in block 16, which was acre property carrying riparian rights. As Payne was desirous of purchasing land running to the lake, and first tried to buy in block 7 and was refused because the lots did not run to the lake and there was a street intervening, it would seem he did not then understand from the plat that the open space to the lake was a public street, else he would not have endeavored to purchase there, so as to have his land run to the lake. At any rate, his testimony at this point is more consistent with the view that he supposed purchasers of lots fronting on this strip on the lake would acquire rights to the strip which other lot owners would not enjoy. But the proprietor of the subdivision was then not offering those lots for sale, according to the testimony of this witness, and the only reason given is, that Rees said there was a street intervening. It would seem more in line with the evidence, and consistent with all proper inferences to be drawn from it, that the use to which the strip in question should finally be devoted was as yet an unsolved problem with Hundley. At any rate, it cannot be claimed that simply by the sale of the lots in block 11 to Payne there could arise any implied covenant to him that the strip in controversy in front of blocks 6 and 7 should be devoted to the purposes of a street or way either for the benefit of the lot owners or the public at large, for the plat did not designate any purpose for which such strip should be used, but this omission was sought to be supplied by the testimony of Payne of representations made to him by the owner's agent when he endeavored to purchase block 7. Whatever else might be here said, it would seem to be sufficient to say that he did not buy, upon such representations, in block 7, but afterward bought in block 11 without any representations whatever, and, so far as the evidence discloses, without being

induced or in any way influenced to purchase by what had been said about the strip in question. So far as Yaggy's rights are concerned, he simply testified that he was,—that is, at the time of the trial in 1892,—the owner and in possession of lots 1 and 2, in block 7. Of whom or when he bought, or how he derived title, was not shown. At the time of the trial this strip in front of Yaggy's lots was, and had been for more than twenty years, in possession of others under claim of ownership, and Yaggy's rights, if he had any, were barred. So, too, in regard to Payne and other individual lot owners. They stood by and saw this strip, which they now claim was intended as a street or way for their benefit, enclosed, appropriated and used by Hundley, Mason, Kohlsaat and others as private property, without in any manner seeking to enforce their alleged rights for more than twenty years, and without extending this opinion in the discussion of the relative rights of abutting and other lot owners, we conclude the consideration of the case by holding that all of their alleged rights are barred by lapse of time and *laches.* They became parties to the suit in 1892, and, so far as their rights are concerned, the suit must, as to them, be regarded as having been then first commenced. *Dunphy* v. *Riddle*, 86 Ill. 22.

The decree in each case is reversed, and the causes are remanded for further proceedings not inconsistent with this opinion.          *Reversed and remanded.**

---

*The record in this cause was, in the lifetime of Mr. JUSTICE BAILEY, assigned to him to prepare the opinion of the court, but he died before any opinion was prepared, and the record was reassigned after his death,