DAVID T. LITTLER

v.

THE CITY OF LINCOLN.

*Filed at Springfield March 29, 1883.*

1. VACATING TOWN PLAT—*by the owner — concurrence of municipal authorities not essential.* The statute authorizing the owner or owners of lots platted as an addition to a town to vacate the same, or any part thereof, does not require the concurrence or joint action of the municipal authorities with the owner of the premises, but allows him, of his own volition alone, to vacate the plat, or part of it, by his deed declaring that fact, subject only to the restrictions named in the statute that it shall not abridge or destroy the rights or privileges of other proprietors in such plat, and shall not authorize the closing or obstructing of any public highway laid out according to law. Chapter 145 of the Revised Statutes has no reference to such vacations, but relates exclusively to the vacation of streets and alleys by municipal authorities.

2. SAME—*of the mode of making the vacation—by whom it may be made—and what the instrument declaring the same must contain.* The statute only requires that the owner of the lots or blocks within the part of a town plat sought to be vacated, shall execute the deed for that purpose. The act does not prescribe what the deed shall contain, further than it shall declare the plat or part thereof vacated. The party vacating must be the exclusive owner of the lots and blocks, but it is not required that the deed shall make exhibit of his title, nor recite how he became the sole owner. And a deed vacating a part of the plat of an addition by one person, is *prima facie* valid and conclusive of his right to make such vacation; but it may be impeached by showing that the party making it did not possess the capacity, for want of ownership of all the lots in the part of the plat attempted to be vacated. The *prima facie* case made by the production of such deed must be overcome by satisfactory evidence of the disability of the party to make it.

3. SAME—*evidence in respect to ownership—presumption of ownership from deed of vacation.* A petition of a party to a city council for leave to vacate a plat of an addition, or a part thereof, which states he was the owner of all the lots and blocks within the territory in which it is sought to have the plat vacated, except two lots, is not sufficient evidence of a want of ownership of the part so excepted to overcome the presumption of his entire ownership arising from his deed of vacation of the whole plat, made at a subsequent time.

4. SAME—*taking subsequent deed, as evidence of want of prior title.* The taking of a quitclaim or even a warranty deed does not prove that the

23—106 ILL.

grantee therein had no prior title.   It is not an admission which affords evidence of a prior want of title.

5.   SAME—*occupancy by another, as evidence of outstanding title.*   Proof of the occupancy by another, of certain lots in a plat vacated by one claiming to be the owner of all the lots in such plat, is not such evidence of an outstanding title as to defeat his deed of vacation, as the occupant may have been his tenant.

6.   SAME—*who may object to the vacation—other proprietors.*   The rights and privileges of other proprietors in the plat of an addition to a town or city, which the statute protects against the vacation of the plat, or a part thereof, are legal rights and privileges, and such parties can not be affected in such rights by the closing of streets not adjacent to their property, nor directly affording access thereto and egress therefrom.

7.   SAME—*dedication of streets—vacation of plat before acceptance of dedication.*   Where the public authorities of a town or city have not accepted a dedication of the streets in a plat on an addition, and no public highway has been laid out according to law, and no private rights in any of the lots or blocks are involved, no one has an interest which can' be adversely affected by the vacation of the plat, and the owner so vacating a portion of such plat and inclosing the streets is.not liable to any penalty for an obstruction of the same.

8.   SAME—*as to streets which have been or may be laid out by the public authorities.*   The vacation of a plat of an addition to a town or city will not affect streets laid out over the addition by municipal authority, and forms no impediment to the future laying out of streets across the territory affected. It has simply the effect to withdraw the proposed dedication of the streets, as shown upon the plat.

9.   DEDICATION *for public streets—there must be an acceptance—and how the acceptance to be indicated.*   To constitute a complete dedication of land for a street or highway there must be an acceptance.   While it is not essential there should be any formal act of acceptance, there must be user, or some other act indicating acceptance, by those authorized in such matters to represent the public, to complete the dedication.

10.   SAME—*effect of platting an addition to a town or city, as a mere offer to dedicate the streets—presumption as to acceptance.*   Until acceptance of a proposed dedication by the municipal authorities of a city or town, although the original proprietor may be estopped to deny a dedication of the streets and alleys as against intervening private rights, his act in platting an addition to the city or town, and acknowledging and recording such plat, is in the nature of a mere offer to the municipality, and until the proper authorities accept the dedication they can not be bound, by *mandamus* or otherwise, to open or improve the streets, and until such acceptance they can have

no right in the streets, as trustees or otherwise. Acceptance of the dedication can not be presumed from the mere proof of the execution and recording of the plat.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Logan county; the Hon. CYRUS EPLER, Judge, presiding.

Suit was commenced by the city of Lincoln against David T. Littler, before a justice of the peace of Logan county, for obstructing certain streets. The justice rendered judgment for Littler, and the city appealed to the circuit court of that county. Judgment was there rendered in favor of the city, and against Littler, for $200. Littler appealed from this judgment to the Appellate Court for the Third District, and that court affirmed the judgment of the circuit court. This appeal is from the last named judgment.

Upon the trial the city read in evidence a petition addressed by Littler to the city council of Lincoln, in which Littler represented that he was the owner of all lots and blocks (except two lots belonging to the estate of —— Bell, in block 152,) north of Eleventh street and west of Adams street, in Knapp, Bird & Tinsley's addition to Postville, then part of the city of Lincoln; that such lots and blocks were vacant and unoccupied; that there were no sufficient streets either on the north or west of said addition; and proposing, in case the prayer of his petition was granted, to convey to the city, for street purposes, enough land on the north and west of said addition—(on the west, north from Eleventh street to the north-west corner of said addition,)—to make good and sufficient streets, and to replat the land in accordance with a plat thereto annexed, and concluding by praying the vacation of all the streets, parts of streets, and all the alleys and parts of alleys, lying north of Eleventh street and west of Adams street, in said addition. The city then also read in evidence

the following ordinance, passed by the city of Lincoln in response to said petition:

"*Be it enacted by the City Council of the City of Lincoln:*

"Section 1.   All the streets, parts of streets, and all the alleys and parts of alleys, north of Eleventh street and west of Adams street, in Knapp, Bird & Tinsley's addition to Post-ville, (now a part of the city of Lincoln,) are hereby vacated; and the right of said city is hereby released to David T. Littler, who is the owner of the land embraced within the limits aforesaid.

"Sec. 2.   So much of the plat of said addition as lies north of Eleventh street and west of Adams street is hereby vacated.

"Sec. 3.   All the rights, grants and privileges embraced in the first and second sections of this ordinance, upon this express condition, that the said Littler will convey to the city of Lincoln, for street purposes, the following described strips of land, to-wit: sixty-six feet on the north line of said addition on the land owned by said Littler, and sixteen feet on the west side of Adams street, (and adjacent thereto,) running north from Eleventh street over the land owned by him, which said strips of land are required of the said Littler as the consideration for the grants, rights, privileges, to the said Littler contained in the first and second sections of this ordinance, which said land, when so conveyed, is hereby declared to be subject to the absolute control of the city of Lincoln for street purposes.

"Sec. 4.   The land lying north of Eleventh street and west of Adams street shall be surveyed and platted substantially in the manner as shown by plat thereof filed in the city clerk's office with the petition of said Littler, and this ordinance shall take effect and be in force only from and after the time the said Littler shall cause such survey and plat to be made, acknowledged and recorded, as provided by law in

such cases, which platting, etc., shall be made and completed within six months from the date of approval of this ordinance.

"Approved February 3, 1879; passed February 3, 1879.

D. L. BRAUCHER, Mayor.

C. M. KNAPP, City Clerk."

(Certificate of city clerk, under seal, of the passage and publication of said ordinance.)

Also, a record of a plat filed by Littler, and recorded May 22, 1879, in recorder's office of Logan county. This plat is in conformity with the proposition of Littler, submitted in his petition to the city council. It was properly certified by the county surveyor, and duly acknowledged by Littler.

The city then also read in evidence the record of a quitclaim deed from Sarah Keown and others, to Littler, dated April 2, 1879, conveying their interest in lots 9 and 10, in block 151, in Knapp, Bird & Tinsley's addition to the late town of Postville, (now a part of the city of Lincoln.) Also, a quitclaim deed from Clement Carpenter and wife, to Littler, dated March 22, 1881, conveying lots 3, 4 and 5, in block 152, Knapp, Bird & Tinsley's addition to the city of Lincoln.

The city then called D. H. Harts as a witness, on its behalf, who, being sworn, testified: "I am mayor of the city of Lincoln. Block 127, in Knapp, Bird & Tinsley's addition to the city of Lincoln, is occupied by a school house, and 128, 107 and 110 are occupied by residences. Blocks 130, 147, 150, are each fenced by themselves, but there are no houses upon them. There are a large number of residences in that addition south of Eleventh street, and all of said premises are within the corporate limits of the city of Lincoln."

The city then also read in evidence the following stipulation between the parties:

"It is stipulated by and between the parties to this suit that the facts are as follows:

"1st.    That D. T. Littler, defendant, in May, 1881, through his agents, constructed a board fence so as to inclose the following described real estate:    All the lots and blocks in Knapp, Bird & Tinsley's addition to the town of Postville, (now city of Lincoln,) county of Logan, and State of Illinois, that lie north of Eleventh street and west of Adams street, in what is claimed to be streets and alleys inside of the boundaries above mentioned; that none of the streets outside of said inclosure, to-wit, Adams street and Seventeenth street, in said city of Lincoln, are inclosed by said fence.

"2d.    That notice in writing was served upon said Littler to remove said fence as an obstruction to the public streets claimed to exist inside of the boundaries of said inclosure, in May, 1881, by the marshal of said city, under authority from said city.

"3d.    That the fence never has been removed, but still remains as originally constructed.

"4th.    All ordinances of the city of Lincoln referring to or bearing upon the controversy are to be read in evidence, by consent, together with all papers in this case.

"5th.    Petition of D. T. Littler to the city council of the city of Lincoln, dated ———, and plat accompanying the same, together with all resolutions and ordinances passed by the city council in connection with said petition, are to be read in evidence, by consent.

"6th.    The deed of vacation, of date April 21, 1881, of David T. Littler, together with all other papers, plats and records made and recorded in connection with such vacation; also, all papers showing a replatting of said real estate are to be read in evidence.

"7th.    All deeds vacating plats inclosed by fence above mentioned, together with all other papers, records, etc., by which said Littler vacated or attempted to vacate that part of said plat embraced by the fence above mentioned, filed in spring of 1881,—it being agreed as to all papers above men-

tioned, if the originals are not present the records or certified copies may be read in evidence.

"9th.    That no part of said fence is outside the boundary lines of the corners fixed by Thomas G. Gardner in the survey accompanying said plat filed in the recorder's office of Logan county, Illinois, and any map of the city of Lincoln, published by authority of the city of Lincoln, may be presented to the court, by consent, and is to be put in evidence by consent.

"10th.    It is agreed that defendant, Littler, owned the fee title to all lots and blocks embraced in that part of above plat vacated or attempted to be vacated by said Littler in the spring of 1881, before vacation, and that since the vacation he has conveyed the land embraced within the limits aforesaid to one Wm. Kurtz, the record of which deed shall also be read in evidence; that all of the streets shown to exist on the plats above referred to never were worked or improved in any way, nor were they ever used or traveled by the public, said entire tract of land being now covered with a blue-grass sod, and from its general appearance it is impossible to locate any of the streets or alleys attempted to be vacated, and it has been in that condition for at least twenty years, last passed; that there are on all sides of tract inclosed, public streets, none less than sixty-six feet wide.

"11th.    That all of the lots and blocks embraced and inclosed by the fence were vacant and unoccupied at the time of building fence.    It is agreed that either party may call witnesses, or offer proof, upon any issue not covered by this stipulation."

The city then read in evidence the following ordinance:

"Sec. 2.    Whoever shall place, throw or leave, or cause to be placed, thrown or left, any obstructions or incumbrance, not authorized by ordinance, in any street or alley, shall be subject to a penalty of not less than three dollars, and a like

penalty for each day he shall not remove the same after being notified so to do by the mayor, street commissioner, or any police officer of said city."

Also, paragraph 20 of the charter of the city of Lincoln, to prevent incumbering of streets, sidewalks, alleys and public grounds of the city, with any article or substance whatever.

This was all the evidence introduced by or on behalf of the city.

Littler then read in evidence the following deed of vacation, which was filed for record April 21, 1879:

"Know all men by these presents, that I, David T. Littler, of the county of Sangamon, and State of Illinois, am the owner of the following described real estate, to-wit: Blocks 99, 100, 101, 102, 103, 104, 105, 106, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 151, 152, 153, 154, 155. 156, 157, and 158, in Knapp, Bird & Tinsley's addition to the town of Postville, (now part of the city of Lincoln,) and also the owner of reversionary interest in the parts of streets and alleys embraced within that part of said addition above described, and being the owner of said premises aforesaid, and in pursuance of the power in me vested by chapter 109 of the Revised Statutes of the State of Illinois of 1874, I do hereby, and by these presents, vacate so much of said plat as lies north of Eleventh street and west of Adams street, in said addition, which portion of said plat embraces only the premises above described; and I hereby ask, that so much of said plat as lies within the limits aforesaid be cancelled of record, in pursuance of the statute above mentioned.

"Given under my hand and seal the 29th day of April, 1879.              DAVID T. LITTLER. [Seal.]

"Acknowledged before T. T. Holton, clerk of the circuit court of Logan county."

Littler then gave in evidence a copy of the resolutions passed by the city of Lincoln May 29, 1879, approving the plat of his addition to the city, and also the record of a deed of his vacating that plat, dated March 23, 1881, and the cancellation of the plat of record. He also gave in evidence the record of a deed by himself to the city of Lincoln, for a strip of land sixty-six feet wide, on the west side of Knapp, Bird & Tinsley's addition to Postville, (now part of the city of Lincoln,) and extending north from Eleventh street, in said addition, to the north-west corner of said addition. Also, a strip of land sixty feet wide, described as follows: "Beginning at the south-west corner of the south-west quarter of section 25, town 20 north, range 3 west, third principal meridian, thence south sixty feet, thence east parallel with the quarter section line to the west line of Adams street, in said above named addition, thence north sixty feet, to the quarter section line, thence west on the quarter section to the place of beginning; also, a strip of land sixteen feet wide, described as follows: beginning at the north-east corner of block 151, in said above named addition, thence west sixteen feet, thence south parallel with Adams street, in said addition, to the line of Eleventh street, thence east sixteen feet, to the south-east corner of block 106, in said addition, thence north on west line of Adams street to the place of beginning— all for street purposes, with a reservation in said deed that if the land should cease to be used for street purposes, to revert back to the grantor."

Mr. M. HAY, and Messrs. BLINN & HOBLITT, for the appellant:

Where a person is in peaceable possession of land, a municipal corporation can not try the validity of proceedings to vacate streets and alleys, or the title thereto, by indirect means. It must be attacked directly by suit in ejectment. *City of Chicago* v. *Gasselin,* 4 Bradw. 570.

Suit can not be maintained under a city ordinance for obstructing a street, unless it appear that the street had been opened for public use, and was in fact, as well as in law, a public street. *City of Chicago* v. *Gasselin*, 4 Bradw. 573; *City of Oswego* v. *Oswego Canal Co.* 2 Seld. 264; *Underwood* v. *Stuyvesant*, 19 Johns. 186; *Bissell* v. *New York Central R. R. Co.* 26 Barb. 630; *The State* v. *Corver*, 5 Strob. (L. R.) 217.

The city of Lincoln had the power, under its charter, to discontinue any streets or alleys, upon consent, in writing, of those owning land or lots adjoining the street, by vote of three-fourths of the aldermen. See charter of the city of Lincoln, 1 Private Laws of 1867, p. 399, sec. 20.

Having exercised that power by the passage of the ordinance in evidence, the law will presume it was done lawfully. 1 Dillon on Mun. Corp. 325, sec. 310; *Lexington* v. *Headley*, 5 Bush, 508; *Covington* v. *Boyle*, 6 id. 204; *McCormick* v. *Bay City*, 23 Mich. 457; *Stockert* v. *East Saginaw*, 22 id. 104.

Independently of the action of the city council in consenting to the vacation of streets and alleys, appellant had the right, under the statutes of this State, to vacate that part of Knapp, Bird & Tinsley's addition that he owned, by deed of vacation. Sec. 7, chap. 109, Underwood's Stat. 1878, p. 954.

At the time the deed was filed vacating "Littler's addition," it is agreed he owned the fee title, and upon vacation of the plat the right of the public to the streets and alleys, under the statute, became divested, and the title vested in the original owner of the plat.

Mr. O. C. SHARP, and Messrs. BEACH & HODNETT, for the appellee:

The party making the plat must be the owner of the lands platted. Rev. Stat. 1874, sec. 1, p. 771.

A party can not vacate a plat unless he is the owner of all the lots in the plat. Rev. Stat. 1874, sec. 6, p. 772; *Leech* v. *Waugh*, 24 Ill. 228.

A city holds its streets in trust for the public, and has no power to alienate them to others, or divest itself of control over them. *Kreigh et al.* v. *City of Chicago,* 86 Ill. 407; *City of Alton* v. *Transportation Co.* 12 id. 60; *City of Quincy* v. *Jones,* 76 id. 231; *Brooklyn Commissioners* v. *Armstrong,* 45 N. Y. 234; *State* v. *Mayor of Mobile,* 5 Porter, (Ala.) 564; 3 Dillon on Mun. Corp. secs. 445, 512; *Illinois Canal Co.* v. *St. Louis,* 2 Dill. (U. S.) 84; *Oakland* v. *Carpenter,* 13 Cal. 540; *Gale* v. *Kalamazoo,* 32 Mich. 344.

The city of Lincoln having no power to pass the ordinance vacating and releasing to appellant its streets and alleys, is not estopped from denying the validity of the same. *Schœffer et al.* v. *Bonham et al.* 95 Ill. 368; *Miller et al.* v. *Goodwin et al.* 70 id. 659; 1 Dillon on Mun. Corp. sec. 381, and authorities cited; *City Council* v. *Plankroad Co.* 31 Ala. 76; *McPherson* v. *Foster,* 43 Iowa, 48; *Loan Association* v. *Topeka,* 20 Wall. 655.

Powers of municipal corporations are strictly construed. 1 Dillon on Mun. Corp. sec. 55, and note; *Petersburg* v. *Metzker,* 21 Ill. 205; *Minturn* v. *Larue,* 23 How. (U. S.) 435; *Leonard* v. *Canton,* 35 Miss. 189; *Argenti* v. *San Francisco,* 16 Cal. 282; *Douglas* v. *Placerville,* 18 id. 643; *Lafayette* v. *Cox,* 5 Ind. (Porter,) 38; *Bank* v. *Chillicothe,* 7 Ohio, 31; *Collins* v. *Hatch,* 18 id. 523.

The power to enact city ordinances, being delegated, must be strictly construed. *Heeney* v. *Sprague,* 11 R. I. 456; S. C. 23 Am. Rep. 502.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

In the view we take of this case it is not necessary to consider the effect of the action of the city council in response to appellant's petition of November 18, 1878, to vacate the portion of the plat therein described. By the statute then and still in force, it was and is provided, by section 6, of chapter 109, Rev. Stat. 1874: "Any such plat"—*i. e.,* plat

of a town, or addition thereto,—"may be vacated by the owner of the premises at any time before the sale of any lot therein, by a written instrument declaring the same to be vacated, executed, acknowledged or proved, and recorded in like manner as deeds of land; which declaration, being duly recorded, shall operate to destroy the force and effect of the recording of the plat so vacated, and to divest all public rights in the streets, alleys and public grounds, and all dedications laid out or described in such plat. When lots have been sold, the plat may be vacated, in the manner herein provided, by all the owners of lots in such plat joining in the execution of such writing." And by section 7 of the same chapter, that "any part of a plat may be vacated in the manner provided in the preceding section, and subject to the condition therein prescribed: *Provided,* such vacation shall not abridge or destroy any of the rights or privileges of other proprietors in such plat: *And provided, further,* that nothing contained in this section shall authorize the closing or obstructing of any public highway laid out according to law."

This does not require the concurrence or joint action of the city council of cities, or board of trustees of villages, with the owner of the premises, but allows him, of his own volition alone, subject to the restrictions and qualifications mentioned, to vacate the plat, or part of plat, by his deed declaring that fact. Chapter 145 of the same statute has no reference to such vacations, but relates exclusively to the vacation of streets and alleys by municipal authorities.

Appellant, by his deed of April 29, 1879, declares so much of the town plat as includes the streets he is charged with obstructing, vacated. The deed recites that he is owner of all the lots and blocks within the territory declared vacated, and this must be accepted as true unless it has been overcome by other evidence. Counsel for appellee claim that it has been so overcome: First, by a statement in appellant's petition to the city council praying that body to vacate the

same part of the plat; second, by two quitclaim deeds made to appellant, subsequent to the date of his deed of vacation, for lots within the territory assumed to be vacated; and third, by evidence of a witness, testifying, orally, that certain lots and blocks described by him were occupied at the date of appellant's deed of vacation, etc.

*First*—Appellant's petition to the city council represented that he was the owner of all the lots and blocks in the territory within which he sought to have the plat vacated, except two lots belonging to the estate of —— Bell, in block 152. It was not therein shown, nor has it been otherwise shown, that there was any serious hindrance to his acquiring the title to those two lots. That petition was dated on the 18th of November, 1878, and, as has been shown, his deed of vacation was dated April 29, 1879,—surely long enough subsequently to have enabled him to acquire the title to these lots. It can not, in a country like ours, where real estate changes hands with almost the same facility and rapidity as personal property, be held that because an individual did not own real estate on the 18th of November, it conclusively follows that he did not own it on the 29th of the following April. At all events, we think the assertion of ownership at the last named date, in a matter wherein such assertion became material, as it did, in executing a deed of vacation, is sufficient to overcome the presumption of continued non-ownership, resulting from the admission that he did not own it at the first named date.

*Second*—Quitclaim deeds, and even warranty deeds, do not prove that the grantee had no prior title. It is within every day's experience that persons, out of abundance of caution, take deeds from different parties for the same real estate. It shows the party purchasing fears there may be superiority in the title he purchases; but it is not in fact or in theory an admission that he does not already have the superior title. *Sparrow* v. *Kingman,* 1 N. Y. (1 Comst.) 246, *et seq.; Schuch-*

*man* v. *Garrett,* 16 Cal. 100 ; *Cannon* v. *Stockman,* 36 id. 539 ; *Watkins* v. *Holman,* 16 Peters, 25. The statute, we have seen, where lots or blocks have been sold, only requires the concurrence of all the owners of lots and blocks within the territory to be vacated, and, of course, if the petitioner has become sole owner of such lots and blocks, no concurrence of others can be wanting. And where, as here, the object is simply to vacate a part of the plat, it is only required that the owner or owners of the lots and blocks within the part sought to be vacated shall execute the deed ; but it is not prescribed what the deed shall contain, further than that it shall declare the plat or part of plat vacated. The party or parties vacating must be exclusive owner or owners of the lots and blocks ; but it is not required that the deed shall make exhibit of his title, nor recite how he became sole owner. The effect is, as we conceive, precisely as in the case of any other deed. *Prima facie* it is valid and conclusive, but it may be impeached by showing that the party making it did not possess the capacity. The *prima facie* case made by the production of the instrument itself, must be overcome by satisfactory evidence of the disability of the party to make it. If, at the date of this deed of vacation, there was an outstanding title to any of these lots or blocks, it could have been readily shown by the original deeds or by the public records, and it should have been thus proven.

*Third*—The evidence of occupancy of certain lots is not necessarily repugnant to appellant's claim of ownership. For aught that appears the occupants may have been in possession as his tenants. But leaving out this view, the evidence, in our opinion, is wholly inconsequential. The blocks described by the witness as being occupied are 127, 128, 107, 110, 130, 147 and 150. As we understand the evidence, these blocks all lie east of Adams street, and therefore beyond the territory involved in the controversy, and not one of them is included in the deed of vacation.

It is true, all of them, except 128, front on Adams street, and that street forms the eastern boundary of the part of the plat which the deed assumes to vacate; but that street is not affected by the deed, and has not been obstructed by appellant. The stipulation expressly admits that the obstruction complained of consists of a board fence, constructed by order of appellant, so as to inclose "all the lots and blocks in Knapp, Bird & Tinsley's addition to the town of Postville, (now city of Lincoln,) county of Logan, and State of Illinois, that lie north of Eleventh street and west of Adams street; * * * that none of the streets outside of said inclosure, to-wit, Adams street and Seventeenth street, in said city of Lincoln, are inclosed by said fence." And the stipulation also further expressly admits that "all the lots and blocks embraced in and included by the fence which constitutes the obstruction complained of, were vacant and unoccupied at the time of the building of the fence, and that there are, on all sides of the tract inclosed, public streets,— none less than sixty feet wide." The rights or privileges of other proprietors in the plat, which the statute protects, are necessarily legal rights and privileges, and such parties can not, therefore, be affected by the closing of streets not adjacent to their property, nor directly affording access thereto and egress therefrom. *Chicago et al.* v. *Union Building Association,* 102 Ill. 379.

Giving the effect we have indicated to the deed of vacation of April 29, 1879, the portion of the plat therein described was then vacated. But that territory was replatted by appellant, and made an addition to the city by his plat of date May 22, 1879, and it only remains to inquire whether that plat was vacated by appellant's deed of vacation of March 23, 1881. The stipulation admits that appellant, at that time, owned all lots and blocks embraced in that plat, and so no question in that regard arises on this deed. What we have said in other respects of the deed of April 29, 1879,

applies with equal force to this deed, and need not be repeated.

The chief objection urged against this deed, upon the assumption that the plat thereby sought to be vacated was valid, is, that it violates a contract between appellant and the city. But, in our opinion, this is clearly a misapprehension. The city parted with no property right as a consideration for its assent to this vacation. The stipulation admits "that all of the streets shown to exist on the plats above referred to never were worked or improved in any way, nor were they ever used or traveled by the public, said entire tract of land being now covered with a blue-grass sod, and from its general appearance it is impossible to locate any of the streets or alleys attempted to be vacated, and it has been in that condition for at least twenty years last passed." The general doctrine has been repeatedly recognized by this court, that to constitute a complete dedication there must be an acceptance. It is not essential that there should be any prescribed formal act of acceptance, but there must be user, or some other act indicating acceptance, by those authorized in such matters to represent the public, to complete the dedication. *Gentleman* v. *Soule,* 32 Ill. 271; *Rees* v. *City of Chicago,* 38 id. 322; *Illinois Ins. Co.* v. *Littlefield,* 67 id. 368; *Town of Princeton* v. *Templeton,* 71 id. 68; *Fisk* v. *Town of Havana,* 88 id. 208.

It was never intended by our statutes that owners of property, by making plats of additions to cities and villages, could compel the municipal authorities to accept the dedications thereby declared, change municipal boundaries to correspond therewith, and open and work the streets as marked on such plats, for if this might be done, the boundaries of municipalities, and the location, extent and width of streets, would largely depend on the will of property owners, and not on the judgment of the proper municipal authorities. But an examination of the statutes will show, that so far from this being

the fact, the making and filing of the plat of an addition does not, of itself, bring the territory platted within the jurisdiction of the municipal authority. It may appear upon the records as part of the plat of the city or village, and yet not be within the boundaries of the city or village government; and, likewise, territory of which no plat is filed may be included within the boundaries of the city or village government. See chap. 109, Rev. Stat. 1874; and sec. 5, art. 1, sec. 1, art. 5, of chap. 24, Rev. Stat. 1874; sec. 16, art. 3, of chapter 24, same statute; and sec. 195, *et seq.*, of same chapter; and, also, act of May 29, 1879, Laws 1879, p. 77. And where the municipality is organized under a special charter, the charter defines the territorial extent and boundaries of the municipality. (Dillon on Mun. Corp. (1st ed.) sec. 124.) And so, until acceptance by the municipality, although the owner is estopped to deny the dedication whenever private rights intervene, the act of the owner in platting, etc., is in the nature of a mere offer to the municipality. Until the municipality accepts, it can not be bound, by *mandamus* or otherwise, to open or improve the streets; and until then, it necessarily can have no rights in the streets, as trustee or otherwise. In the case of a deed by A to B, it is, in general terms, said, the deed vests the fee in B, but B can not be compelled to accept; and if a burden is imposed by the deed, an acceptance can not be assumed from the mere fact that the deed is executed. 1 Washburn on. Real Estate, (2d ed.) 311, *315; 2 id. 607, *581; *Hulick* v. *Scovil*, 4 Gilm. 177, *et seq.; Union Mutual Ins. Co. et al.* v. *Campbell*, 95 Ill. 284, *et seq.* So here, where the plat, if accepted as a conveyance, imposes the burden on the city authorities to open, improve and keep in repair the streets, the acceptance can not be assumed from the mere proof of execution of the plat. See *City of Chicago* v. *Gosselin*, 4 Bradw. 573; *State* v. *Trask*, 6 Vt. 355; *Underwood* v. *Stuyvesant*, 19 Johns. 181; *City of Oswego* v. *Oswego Canal Co.* 6 N. Y. 257; *Holdame* v.

*Trustees of the Village of Cold Spring*, 21 id. 474; *Commissioners* v. *Taylor*, 2 Bay, 282; Dillon on Mun. Corp. (1st ed.) sec. 505, and note 2,—and it is upon this doctrine that secs. 6 and 7, of chap. 109, proceed. Where no private rights in the lots or blocks are involved, and no public highway has been laid out according to law, no one has an interest which can be adversely affected by the vacation. No trust is, in such case, assumed by the municipality, and no duties which concern the public are imposed upon it. The vacation can, therefore, take from the municipality nothing, in the sense of property, which belongs to it. It has nothing of a property nature to confer upon the private owner which can form the consideration for a contract.

Our conclusion, therefore, necessarily is, no contract has been violated by this deed of vacation.

It is to be observed, the vacation of a plat has nothing to do with streets laid out by municipal authority, and it forms no impediment to the future laying out of streets across the territory affected,—it simply has the effect to withdraw the proposed dedication, and leave the municipality to act with reference to the territory as it would had the plat never been made and filed. It is quite clear there was no public or private right here affected by the deed of vacation.

The conviction, in our opinion, was wrong. The judgment must be reversed, and the cause remanded for further proceedings consistent with this opinion.

                                        *Judgment reversed.*