SAMUEL STEVENSON, Appellee, vs. JOHN A. LEWIS, Exr.,
et al. Appellants.

*Opinion filed February 16, 1910.*

1. APPEALS AND ERRORS—*ordinarily no direct appeal to the Supreme Court lies in foreclosure case.* Ordinarily no appeal lies directly to the Supreme Court in a foreclosure case, as there is not ordinarily involved in such a case any question of freehold, franchise, the validity of a statute, or any constitutional question, but only the matter of establishing a lien for money.

2. SAME—*when an appeal in foreclosure involves a freehold.* Where a city claiming to own the fee, as trustee for the public, in certain land, including the premises in controversy in a foreclosure case, is made a party to the bill and its claim of title is directly put in issue by the pleadings a freehold is involved, and upon the city's appeal from the foreclosure decree all assignments of error by any of the parties are open for consideration.

3. SAME—*issue as to existence of perpetual easement in public grounds involves a freehold.* An issue as to the existence of a perpetual easement in public grounds and streets claimed by a municipality by virtue of an alleged dedication involves a freehold.

4. DEDICATION—*effect of acknowledgment and recording of a plat.* The acknowledgment and recording of a plat in accordance with the statute is a conveyance in fee simple of the title to grounds set apart for public purposes, and if the municipal corporation is not then in existence the fee in the streets and other public grounds remains in abeyance, subject to vest in the municipal corporation as soon as it is created, if the dedication is not previously withdrawn.

5. SAME—*dedication of public streets and grounds is not complete until acceptance.* A municipal corporation is not bound to accept the streets, alleys and other public grounds designated in a plat, but such acceptance is necessary to complete the dedication, and until such acceptance the owner may withdraw his offer of dedication.

6. SAME—*an owner is estopped to deny dedication if private rights have intervened.* An owner of land cannot exercise his statutory right to vacate his plat, even though no lots have been sold, if such vacation will result in the destruction of valuable intervening private rights which he has created; and this is true whether the dedication is statutory or at common law.

7. SAME—*purpose of the statute authorizing vacation of plats.* The statute authorizing the vacation of a plat does not authorize

the owner to destroy private rights created by his deed but is intended only for the extinguishment of public rights, and when an owner has, by deed, created interests in land which depend for their value upon the continued existence of the conditions shown by his plat, there will be implied a covenant that the owner will not destroy such conditions.

8. SAME—*rights acquired by purchasers of lots with reference to plat.* Where an owner of land makes a plat thereof, showing lots, streets and public grounds, and sells lots with reference to the plat, the purchasers acquire, as appurtenant thereto, every easement, privilege and advantage which the plat represents as belonging to the lots as a part of the town or to their owners as citizens of the town, and a covenant is implied that the streets and public grounds shown shall be forever open to the public.

9. SAME—*private rights are not lost by failure of dedication to public.* If a statutory plat fails to become effective as a conveyance of the legal title to the streets and public grounds because the dedication is not accepted by the municipal corporation, or because no municipal corporation is in existence to accept it, or because of the making of a deed of vacation before acceptance, private rights which have accrued are not, therefore, lost.

10. SAME—*estate granted need not be a fee to have benefit of estoppel.* Any estate, whether in fee, for life or for years only, granted in reliance upon the existence of conditions appearing upon the plat, which may be injuriously affected by a change of such conditions, is entitled to the benefit· of the estoppel against the grantor to destroy such conditions.

11. SAME—*equity will interfere to prevent destruction of private rights by vacation of plat.* If the vacation of a statutory plat will operate to the destruction of private rights created by the owner with reference to the plat, a court of equity will interfere to protect such rights and will prevent the vacation of the plat.

12. SAME—*estoppel to vacate plat may be based upon the making of leases.* Where the owner of land plats the same and makes leases of lots for a period of several hundred years, the rental being a gross sum for the whole term, the tenants have practically the same rights as if they had been granted the fee, and the owner is estopped to vacate such plat as to the public streets and parks shown thereon, even though there is no municipal corporation in existence to accept the dedication at the time the attempted vacation is made.

13. MORTGAGES—*when deed of vacation and trust deed may be set aside.* Where the owner of platted land makes numerous long-time leases of lots with reference to his plat, his subsequent deed attempting to vacate certain streets and public grounds to their

prejudice does not affect their rights, and such deed, together with a subsequent trust deed covering a portion of the public ground attempted to be vacated, made after many of the leases were recorded, will be set aside as clouds upon the title of the lessees when the trust deed is sought to be foreclosed.

APPEAL from the Circuit Court of Lake county; the Hon. CHARLES H. DONNELLY, Judge, presiding.

COOKE, POPE & POPE, and W. H. FABRY, for appellants:

The purchaser of a leasehold interest of a lot in a subdivision for a term of upwards of one thousand years, paying the entire consideration in a gross sum in advance, is an owner or proprietor of the lot so purchased, within the meaning of the provisions of sections 6 and 7 of chapter 109 of the Revised Statutes of the State of Illinois, authorizing vacations of plats. 28 Am. & Eng. Ency. of Law, (2d ed.) 233, 234, note 10; *Davenport* v. *Farrer*, 1 Scam. 316; *Wright* v. *Bennett*, 3 id. 258; *Life Ins. Co.* v. *Marseilles Manf. Co.* 5 id. 236; *Coombs* v. *People*, 198 Ill. 586.

The word "owner" includes any person who has the use, control or operation of real estate, whether his estate is an absolute fee or an estate for years under a lease. 28 Am. & Eng. Ency. of Law, (2d ed.) 233, 234, note 10.

As against the owner of a platted tract and those claiming under him, parties purchasing lots with reference to the plat are entitled to have the streets designated thereon remain open, whether there has been a proper acceptance by the public authorities or not. *Corning & Co.* v. *Woolner*, 206 Ill. 190; *Lake View* v. *LeBahn*, 120 id. 92; *Earll* v. *Chicago*, 136 id. 277; *Zearing* v. *Raber*, 74 id. 409.

If the acts of the owner show a valid dedication, and others have been induced, on the strength of such supposed dedication, to expend money, or have leases for no longer time than ten years, which would be lost or injured should the dedication be withdrawn, such owner will be estopped from so doing. *Coal Co.* v. *Challis*, 200 Ill. 222.

PECKHAM, BROWN, PACKARD & WALSH, for appellee:

The words "owner" and "proprietor," as used in the act ·concerning plats, are synonymous and mean the owner in fee. *Saunders* v. *Chicago,* 212 Ill. 206; 29 Cyc. 1549; 32 id. 683; *Hunt* v. *Curry,* 37 Ark. 100; *Latham* v. *Roach,* 72 Ill. 179.

In matters affecting real estate, "owner" means the owner in fee. *Bowen* v. *John,* 201 Ill. 292; *Life Ins. Co.* v. *Marseilles Manf. Co.* 5 Scam. 236; *Insurance Co.* v. *Nelson,* 65 Ill. 415; *Hadlock* v. *Hadlock,* 22 id. 384; *Merritt* v. *Kewanee,* 175 id. 537; *Jarrott* v. *Vaughan,* 6 Scam. 132; *Wright* v. *Bennett,* 3 id. 257.

Estoppel against vacation of a plat by the owner applies only in favor of those who have acquired the fee,—not to lessees of terms for years, however long. *Littler* v. *Lincoln,* 106 Ill. 353.

. A dedication, until accepted by the municipality, is a mere offer and may be revoked. *Jordan* v. *Chenoa,* 166 Ill. 534; *Chicago* v. *Drexel,* 141 id. 109; *Russell* v. *Railway Co.* 205 id. 165.

There can be no acceptance after vacation. *Milling Co.* v. *Freeburg,* 217 Ill. 386; *Venice* v. *Ferry Co.* 216 id. 350; *Swedish Church* v. *Jackson,* 229 id. 506; *Birge* v. *Centralia,* 218 id. 503.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal from a decree of foreclosure rendered by the circuit court of Lake county. The premises involved are a part of the east half of a tract of land· in the city of Zion known as Shiloh Park. This tract was part of a larger body owned in fee simple by John Alexander Dowie, which on July 17, 1901, he caused to be platted as subdivision No. 1 of Zion City. This plat was acknowledged and recorded in accordance with the statute, and Shiloh Park was shown thereon as a tract of land

surrounded by boulevards, marked "Shiloh Park" and not subdivided. Immediately after the recording of the plat a large number of the lots in the subdivision were disposed of, not by sales thereof, but by the granting of leases running until the first day of January, A. D. 3000. On October 1, 1901, John Alexander Dowie, being still the sole owner of the fee of said premises, executed, and on October 2, 1901, caused to be recorded, an instrument purporting to vacate a part of the plat, including Shiloh Park and portions of the adjacent streets. The effect of this attempted vacation upon the rights of the lessees of lots within the subdivision is the question upon which the case turns.

More than a thousand leases had been executed by Dowie before October 2, 1901, precisely similar in their terms, and though none were recorded before that time, a great many were recorded afterward and before the trust deed foreclosed was given, and some of the lessees were then, and had been for several years, in possession under their leases. The trust deed, and the note for $25,-000 which it was given to secure, were executed by Dowie, by an attorney in fact, on November 15, 1905. Dowie died testate on March 9, 1907, and his representatives were made defendants to the bill as well as a large number of lessees whom the appellee brought in to represent all lessees similarly situated, making the lessees not named, parties as unknown owners, and averring that they were too numerous to be made parties and that their rights were amply represented by the lessees named. The city of Zion was also made a defendant, with the allegation that it claimed some interest in the land, the nature of which was unknown to the complainant but which was subordinate to the complainant's rights.

The city of Zion was incorporated on March 31, 1902, including the territory of subdivision No. 1. None of the lots in the subdivision were sold outright. All the leases

were made to run until January 1, A. D. 3000. About the time the plat was made a public meeting was held, attended by fifteen hundred people, at which explanations were given in regard to the disposition of the lots. Those present were directed to go over the land and choose their lots, if they wanted any. *Fac similes* of the plat were distributed at this meeting, and from that time, for several years, these maps, or maps substantially similar, were sent out to prospective purchasers or delivered to them when they came to make personal inquiries about the lots. These maps were used by those engaged in disposing of the lots, and they pointed out on them to purchasers the location of public buildings and the parks and the other points of interest and attractive features of the city, and the values of the different lots were fixed with reference to their location. The park was at that time surrounded by a row of boundary posts painted white, about sixteen feet high and about one rod apart. The rent in the case of each lease was a gross sum for the whole term, and not an amount payable annually or at stated intervals during the term.

After answering the bill, the defendants, who were lessees, and the city of Zion, filed a cross-bill praying that the instrument of vacation be declared null and void and the trust deed be set aside as a cloud upon the title. The cross-bill was dismissed on the hearing and a decree rendered foreclosing the trust deed and ordering a sale of the premises. An appeal was taken directly to this court. Ordinarily no direct appeal lies from the circuit court to this court in cases of foreclosure, because ordinarily they do not involve a franchise or freehold, the validity of a statute or any constitutional question, but only the establishment of a lien for money. In this case the rights contended for by the lessees are easements appurtenant to the estates granted by their leases, which are estates for years only, and such easements do not, therefore, amount to

freehold estates. The city of Zion, however, claims to be the owner in fee, as trustee for the public, as well of the park, including the premises in controversy, as of the streets indicated on the plat. This title is put directly in issue by the pleadings. The issue involves the construction of the acts of the grantor in connection with the plat, and its vacation, and the existence of the fee, and the decision of the case necessarily involves the decision of that issue. An issue as to the existence of a perpetual easement in public grounds and streets claimed by a municipality by virtue of an alleged dedication involves a freehold. (*Waggeman* v. *Village of North Peoria,* 206 Ill. 277.) The case is therefore properly here on the appeal of the city of Zion and all the assignments of error by any of the parties are before us for consideration.

Section 6 of chapter 109 of the Revised Statutes provides that any plat "may be vacated by the owner of the premises at any time before the sale of any lot therein, by a written instrument declaring the same to be vacated, executed, acknowledged or proved, and recorded in like manner as deeds of land; which declaration being duly recorded, shall operate to destroy the force and effect of the recording of the plat so vacated, and to divest all public rights in the streets, alleys and public grounds, and all dedications laid out or described in such plat. When lots have been sold, the plat may be vacated in the manner herein provided by all the owners of lots in such plat joining in the execution of such writing." Section 7 of the same chapter provides that "any part of a plat may be vacated in the manner provided in the preceding section and subject to the conditions therein prescribed: *Provided,* such vacation shall not abridge or destroy any of the rights or privileges of other proprietors in such plat: *And, provided, further,* that nothing contained in this section shall authorize the closing or obstructing of any public highway laid out according to law."

It is contended by the appellee that John Alexander Dowie, though he had granted hundreds of leases of lots running for eleven hundred years, which leases were made with reference to the plat and in reliance upon the easements, privileges and advantages which the plat represented as belonging to the lots, was the exclusive owner of the subdivision; that the lessees were not proprietors in such plat, and that, not having sold the fee of any lot, he could, without regard to the lessees, vacate the plat or any part thereof, and convey the streets, alleys and public grounds as he saw fit. The acknowledgment and recording of the plat in accordance with the statute was a conveyance, in fee simple, of the title to the grounds set apart for public purposes. Since the municipal corporation was not then in existence, the fee in the streets and other public grounds remained in abeyance, subject to vest in the corporation as soon as it was created. (*Canal Trustees v. Haven,* 11 Ill. 554; *Gebhardt v. Reeves,* 75 id. 301; *Village of Brooklyn v. Smith,* 104 id. 429; *Maywood Co. v. Village of Maywood,* 118 id. 61; *Marsh v. Village of Fairbury,* 163 id. 401.) The municipality was not bound to accept the streets, alleys or public grounds as described in the plat, but its acceptance was necessary to complete the dedication. Until such acceptance the owner might withdraw his offer of dedication. (*Littler v. City of Lincoln,* 106 Ill. 353; *Jordan v. City of Chenoa,* 166 id. 530; *Russell v. City of Lincoln,* 200 id. 511; *Reichert Milling Co. v. Village of Freeburg,* 217 id. 384.) Without determining the existence of such right, it may be assumed that on October 1, 1901, Dowie had the right, so far as the municipality (the city of Zion) alone is concerned, to withdraw his offer to dedicate the streets, alleys, parks and public grounds shown on the plat and to vacate the plat. Yet he could not exercise his statutory right to vacate the plat, even though no lots had been sold, to the destruction of valuable intervening private rights which he had cre-

ated. The owner is estopped to deny the existence of the dedication whenever private rights intervene. (*Littler* v. *City of Lincoln, supra; Jordan* v. *City of Chenoa, supra.*) In such case it is immaterial whether the dedication is statutory or at common law. Where the owner has by deed created interests in the land which depend for their value upon the continued existence of the conditions shown by the plat, there will be implied a covenant that the owner will not destroy those conditions. The statute authorizing the vacation of a plat did not authorize the owner to destroy private rights created by his deed but was intended only for the extinguishment of public rights. When an owner of land makes a plat thereof, showing lots, streets and public grounds, and sells the lots with reference to the plat, the purchasers of the lots acquire, as appurtenant thereto, every easement, privilege and advantage which the plat represents as belonging to them, as a part of the town, or to their owners as citizens of the town. The sale and conveyance of lots according to the plat imply a covenant that the streets and other public places indicated on the plat shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use. (*Zearing* v. *Raber,* 74 Ill. 409; *Maywood Co.* v. *Village of Maywood, supra; Earll* v. *City of Chicago,* 136 Ill. 277; *Russell* v. *City of Lincoln, supra; Marsh* v. *Village of Fairbury, supra; Clark* v. *McCormick,* 174 Ill. 164; *Russell* v. *Chicago and Milwaukee Electric Railway Co.* 205 id. 155; *Corning & Co.* v. *Woolner,* 206 id. 190.) If a statutory plat, acknowledged and recorded in conformity with the statute, fails to become effective as a conveyance of the legal title to the streets and public grounds because not accepted by the municipal corporation, or because no municipal corporation is in existence which can accept it, or because of a deed of vacation before acceptance, private rights which may have accrued are not, therefore, lost.

Deeds made with reference to such plat will estop the owner to deny the existence of a dedication. It is not only a conveyance of an estate in fee which may be the basis of an estoppel. Any estate, whether in fee, for life or for years only, granted in reliance upon the existence of the conditions appearing on the plat, which may be injuriously affected by the change of such conditions, is entitled to the benefit of the estoppel. When the vacation of a statutory plat will operate to the destruction of private rights created by the owner with reference to such plat, it is against equity that the owner should vacate the plat, and a court of equity will interfere to protect such private rights.

The cases cited involved sales of lots. There is, however, no difference, in principle, between sales and leases. The case rests upon the doctrine of estoppel, which precludes a person from taking a position injurious to another and inconsistent with his previous conduct upon which such other has relied and acted. In the case of *Alden Coal Co.* v. *Challis,* 200 Ill. 222, there was no plat. The coal company staked out a town site, and an unincorporated town of five hundred or six hundred inhabitants grew up there, built upon streets and cross-streets, and similar to other unincorporated towns. The title to all the real estate, including the streets, was in the coal company, subject to short-time leases (none of them exceeding ten years) of the houses built by the company and of lots upon which others had built houses. It was held that the company having staked out the town, built houses and leased them for residence and business purposes with reference to the streets, and thereby induced persons to establish homes and business in reliance upon the existence of the streets and public places in the town, was estopped by its conduct from denying the dedication of the streets to the use not only of the inhabitants of the town but of the general public, and that the fact that the lots were leased for

terms of years instead of conveyed in fee did not change the principle.

The plat of the subdivision No. 1 of Zion City and the deed of vacation were on record when the appellee took his trust deed. Very many of the leases were on record, showing that they had been taken between the date of the plat and the attempted vacation. The appellee had notice of the lessees' rights. While the estates granted were mere estates for years, their value was practically equal to that of the fee, and the injury to the tenants by the deprivation of the streets and parks was no less than it would have been had they been the owners of the fee. It is true that Shiloh Park only is involved in this suit, but the principle extends to all the streets, alleys, boulevards, parks and public grounds in the city of Zion. If Dowie had the right, on October 1, 1901, to vacate Shiloh Park and the portions of streets included in his deed of vacation of that date, regardless of the interest of the lessees, why may not his successors in title vacate now all the streets and alleys in the city of Zion? No lot has been sold and Dowie's grantee is the sole owner of the fee. Equity will not permit such an injustice, but will enforce, at the suit of individual lessees to whom rights and privileges have been granted by the deeds creating their terms, the implied covenant in their leases against any act of the grantor which shall interfere with the free use by the public of the public grounds. The deed of vacation and the trust deed constitute a cloud upon the lessees' title which they are entitled to have removed.

The decree will be reversed and the cause remanded to the circuit court of Lake county, with directions to dismiss the bill and to enter a decree as prayed for in the cross-bill.

*Reversed and remanded, with directions.*