# Frederick E. Will et al., Appellees, v. City of Zion et al. Wilbur Glenn Voliva, Appellant.

## Gen. No. 7,045.

1. INJUNCTION—*insufficiency of affidavit for temporary injunction partly on information and belief.* To warrant the issuance of a temporary injunction upon allegations of the bill, such allegations must in their material parts be verified positively and not on information and belief, and if the affidavit is positive in part and the remainder upon information and belief, it is not sufficient if the affidavit and bill leave it indefinite and uncertain as to which of the allegations are positively verified and which are stated on information and belief.

2. INJUNCTION—*when temporary injunction is proper though affidavit partly on information and belief.* On a bill for temporary injunction, the affidavit considered in connection with the allegations of the bill is sufficient, where the positive averments of the bill can be distinguished from those which are merely on information and belief, and enough material allegations of the bill are positively sworn to, to warrant the granting of the injunction.

3. INJUNCTION—*when complaint must establish specific injury.* In a suit to restrain city officials and others from preventing complainants from entering or doing lawful acts in certain parks, brought by individuals and not in the name of the People or the municipality, the complainants must establish a specific injury substantially different from that sustained by the public in general.

4. INJUNCTION—*sufficiency of bill to enjoin vacation of parks.* In a suit to restrain the vacation of parks, where the bill shows that the complainants were shown plats and maps with specific portions of the city exhibited as parks, that the agents of the vendors showed the portions platted as parks, and that the complainants purchased or leased land in reliance upon such representations, the bill cannot be held defective for failing to allege in detail the conveyances to the complainants, or the record of the plats, nor can it be inferred that the plats were vacated before the date of the conveyances, and the bill is sufficient to entitle the complainants to an injunction.

5. APPEAL AND ERROR—*when allegations of bill for injunction taken as true.* On an appeal from a decree granting a temporary injunction restraining the vacation of certain parks, the allegations of the bill must be considered as true, when the question of the right to the injunction is considered.

6. EQUITY—*rule as to application of doctrine of laches.* A court of equity applies the doctrine of laches in denial of relief only where from the circumstances, to grant the relief to which the complainant would otherwise be entitled, will, presumptively, be inequitable and unjust, because of delay.

Appeal from the Circuit Court of Lake county; the Hon. EDWARD D. SHURTLEFF, Judge, presiding. Heard in this court at the October term, 1921. Affirmed. Opinion filed April 27, 1922. *Certiorari* denied by Supreme Court (making opinion final).

THEODORE FORBES and CHARLES P. BARNES, for appellant Wilbur Glenn Voliva.

JOHN D. POPE and ALBERT L. HALL, for appellees.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellees, Frederick E. Will and nine other residents, citizens and taxpayers of Zion City, Lake county, filed their bill in the circuit court of Lake county against the appellants, the City of Zion, W. Hurd Clendinen, its mayor, Theodore Becker, its city marshal, Wilbur Glenn Voliva, and eight other appellants, praying for an injunction restraining appellants from preventing appellees, and all other persons similarly situated, from entering or doing any lawful acts within any of the parks, parkways and boulevards of the City of Zion. A temporary injunction was issued as prayed and from that decree this appeal was prosecuted.

The bill alleged, in substance, that the complainants were all residents and taxpayers of the City of Zion, in Lake county, and that some of them are the owners of real estate in said city which real estate was described in the bill, and that others were lessees of John Alexander Dowie and wife; that the City of Zion was duly incorporated under the laws of this State and that the defendants, W. Hurd Clendinen and Theodore Becker, were the mayor and city marshal re-

spectively of said city; that the City of Zion was founded by John Alexander Dowie about 1901, and that plats of the city as subdivided by Dowie were filed for record in the recorder's office of Lake county as provided by statute; that about the time the plats were filed by Dowie, who was the owner of all the land comprising the present city, a public meeting was held and was attended by about fifteen hundred people, at which meeting explanations were made in regard to the disposition of the lots so platted; that general design maps shown by Exhibits A and B, and other sales maps and plats, were distributed at that meeting, and thereafter, for several years, those or similar sales maps were sent out to prospective purchasers by Dowie and his agents, and used by them in disposing of the lots; that the boulevards, streets, alleys, avenues, parkways, thoroughfares, parks and other points of interest and attractive features were pointed out as public parks and thoroughfares, and the values of the lots fixed accordingly; that hundreds of lots were purchased by parties who relied on the representations of these maps; that the complainants were shown these maps on which appeared the public grounds of the city, which public grounds and parks were set out in the bill; that the complainants purchased or leased lots particularly described in the bill.

The bill further alleged that a part of Shiloh Park was adjudicated by the Supreme Court of Illinois in *Stevenson v. Lewis*, 244 Ill. 147, to be a public park, free to all the public, and that Dowie could not legally vacate the plat whereby that park was dedicated to the public, for the reason that lots had previously been leased by him, and the lessees had relied on the general design maps, Plat No. 1 of Zion City Subdivision, and other sales maps, in which this park and other parks were marked as such, and Dowie and his assigns had represented to the purchasers that these were public parks.

The bill then alleged that in the case of *William B. Holmes v. John Alexander Dowie,* in the U. S. District Court for the Northern District of Illinois, Eastern Division, the receiver of Dowie did not claim merchantable title to Shiloh Park, Ophir Park, Edina Park and part of Sharon Park inside of the City of Zion, and part of Kadron and Beulah Parks, and the court entered a decree finding that the receiver of Dowie could not convey merchantable title to any of these parks, and remitted $25,000 to Cobe & McKinnon from their bid for the remaining properties of Dowie because of defective title of Dowie, and that decree has not been appealed from; that Cobe & McKinnon, in the purchase of the assets from the receiver, acted under an agreement with Wilbur Glenn Voliva whereby they were to resell the property to Voliva; that Voliva knew of the reduction in the price at the time it was made and of the reason therefor, and has not since paid any of the $25,000 to the receiver, and has, at all times, acquiesced in said reduction; that John A. Lewis was the sole trustee of all the real estate of Dowie under his last will and testament; that Dowie is dead and, after his death, Lewis, as trustee, filed two bills of review in the U. S. District Court for the Northern District of Illinois, Eastern Division, in the case of *Holmes v. Dowie,* in which bills of review he sought to set aside all proceedings in said case, including the sale of the properties to Cobe & McKinnon, on the ground that the court was without jurisdiction to sell the properties for the reason that the sale was not made according to law; that these two bills of review were dismissed for want of equity, and appeals were prosecuted to the Circuit Court of Appeals of the United States for the Seventh Circuit and are now pending; that Lewis, now deceased, claimed that said sales to Cobe & McKinnon were void and that he, as trustee, had all the interest that Dowie had in the

parks, parkways, boulevards and thoroughfares of the city.

The bill further alleged that all of these properties were dedicated to the public, irrevocably, by Dowie and his receivers, when he and they were the owners in fee simple of the land comprising them, and they were used by the public during the lifetime of Dowie and the incumbency of his receivers; that in December, 1910, the City Council of Zion City, then controlled by the independent party, passed a resolution accepting the streets, alleys, avenues, parks, parkways, boulevards, thoroughfares, public grounds and highways, as shown on the said maps; that the Voliva party came into control of the city council and city government in 1912, and on July 7, 1913, the city council passed a resolution declaring all said parks, parkways, boulevards and thoroughfares to be the property of Voliva; that since 1913, Voliva, Clendinen and Becker have conspired and confederated, and, through the police force of the city, have prevented citizens and the public from entering any of said parks, stating that they were the private property of Voliva; and certain acts of Voliva are set forth in the bill showing his possession and claim of ownership, and it is alleged that he is attempting to sell parts of Shiloh Park. The eight other persons who are made defendants to the bill, it is alleged, claim some title or interest to portions of Sharon Park; that Voliva has attempted to put on the tax list of the city, certain lands mentioned as parks, claiming that he is the owner of the same, and he has placed certain signs in some of the parks showing his claim of ownership; that the government of the city, the mayor, marshal and police force, are under the control of Voliva and do his bidding; that it will be useless and futile for the complainants to apply to any of the officers of the city to induce them to bring an action to protect and defend the rights of the public.

The prayer of the bill was for an injunction against the city and its officers, restraining them from preventing the complainants from entering or doing any lawful act within any of said parks, parkways and boulevards therein described.

Attached to the bill is an affidavit by the appellees which recites that they have read the bill, know the contents thereof, and that the same is true of their own knowledge, except as to those matters stated to be on information and belief, and as to those matters they believe it to be true. Appellants contend that this affidavit is not sufficient to warrant the issuance of a temporary injunction, and for that reason the decree must be reversed. To warrant the issuance of a temporary injunction upon the allegations of the bill, those allegations must, in their material parts, be verified and such verification must be positive and not on information and belief. *Board of Trade v. Riordan,* 94 Ill. App. 298; *Crawford-Adsit Co. v. Bell,* 95 Ill. App. 427; *Ft. Dearborn Safe Deposit Co. v. Riogdon,* 166 Ill. App. 334. If the affidavit is positive in part and the remainder upon information and belief, it is not sufficient if the affidavit and bill leave it indefinite and uncertain as to which of the allegations are positively verified and which are stated to be upon information and belief. *Neil v. Oldach,* 86 Ill. App. 354; *Leeds v. Illinois State Medical & Surgical Institute,* 122 Ill. App. 650; *Schroth v. Siegfried,* 162 Ill. App. 595; *Grabarski v. Stankowicz,* 179 Ill. App. 45; *Christian Hospital v. People,* 223 Ill. 244. If, from the bill and affidavits, the positive allegations can be distinguished from those which are stated to be on information and belief, and there are enough material allegations positively sworn to, a bill thus verified is sufficient to justify the issuance of a temporary injunction. In *Leck v. Baldwin County Colonization Co.,* 178 Ill. App. 93, and *Brethorst v. Wylie,* 205 Ill. App. 72, affidavits almost identical with the one before us

were held to be sufficient, the only difference being that in the former case the word "wherein" was used in addition to the words used in the affidavit now before us, and in the latter case the word "therein" was used. When the affidavit in this case is considered in connection with the allegations of the bill, we think it is sufficient, for the reason that the positive averments of the bill can be distinguished from those which are merely on information and belief, and enough material allegations of the bill are positively sworn to, so as to entitle appellees to a temporary injunction. There is only one allegation in the bill which is on information and belief and that is found in the twelfth paragraph and relates only to the eight appellants other than the city officials, the allegations being that these eight appellants claim some title or interest to portions of Sharon Park, the nature of their claim being unknown to the appellees, but such claim, if any, is without any foundation in law or in fact. This allegation, which is not positively verified, is immaterial when the whole bill is considered together. All of the other averments of the bill are positive and are positively sworn to in the affidavit and for this reason the bill was sufficiently verified to justify the temporary injunction.

It is next urged by appellants that the decree must be reversed for the reason that actions of this kind can only be prosecuted in the name of the People through the Attorney General of the State or the State's Attorney of the county, or by the municipality in which the subject-matter of the controversy is located; also that the bill does not show any special damages or any special interests to any of the appellees different from those of every other citizen of the city. When a suit of this kind is prosecuted by an individual and not in the name of the People or the municipality, the rule is that to justify a court of equity in granting relief, the party complainant must establish a specific

injury to himself substantially different from that sustained by the public in general, otherwise the action must be maintained in the name of the People, or the municipality interested. In *Hamilton v. Semet Solvay Co.*, 227 Ill. 501, the authorities are collected and the above rule is announced. Specific application of this rule was made in *Stevenson v. Lewis*, 244 Ill. 147. In that case Dowie, the predecessor of Voliva, gave a mortgage on a part of Shiloh Park, which is one of the parks involved in this case. A bill was filed to foreclose the mortgage. Certain property owners of Zion City were made parties defendant and they filed a cross-bill praying that the mortgage be removed as a cloud upon the title to the park. The facts as stated in that case are very similar to the facts alleged in this bill. The chancellor dismissed the cross-bill and entered a decree of foreclosure under the original bill. The Supreme Court, after reviewing all of the law and the facts in the case, reversed the decree, with directions to dismiss the original bill and enter a decree as prayed in the cross-bill. In the concluding paragraph of the opinion, on page 157, it was said: "It is true that Shiloh Park only is involved in this suit, but the principle extends to all the streets, alleys, boulevards, parks and public grounds of the City of Zion. If Dowie had the right, on October 1, 1901, to vacate Shiloh Park and the portions of the streets included in his deed of vacation of that date, regardless of the interest of the lessees, why may not his successors in title entirely vacate now all the streets and alleys in the City of Zion? No lot has been sold and Dowie's grantee is the sole owner of the fee. Equity will not permit such an injustice, but will enforce, at the suit of the individual lessees to whom rights and privileges have been granted by the deeds creating their terms, the implied covenant in their leases against any act of the grantor which shall interfere with the free use by the public of the public grounds. The

deed of vacation and the trust deed constitute a cloud upon the lessees' title which they are entitled to have removed.'' We think that case is conclusive, not only of the question of the rights of the appellees to maintain this suit in their own name, but it is also conclusive of several other questions now before us.

Nor do we think there is any merit in the contentions of the appellants that the bill is defective in failing to allege the date and kind of conveyance to each of the appellees, or when they entered into possession; or in failing to show the book and page where the plats were recorded, and what the plats show. Nor can it be contended that the conveyances to appellees might have been after the date the plat was vacated, or that appellees may have had full knowledge of the acts of the city in 1911 and 1913 before appellees purchased; or that appellees, in a court of equity, are seeking to try Voliva's title to the parks and other public grounds.

The bill after describing the manner in which lots were sold or leased and the use of plats and maps showing the public grounds of the city alleged, ''that your orators were shown maps of the ground designed, plat No. 1 of Zion City Subdivision, and the sales maps above mentioned of the City of Zion, by said parties in charge of selling lots in said City of Zion, which showed as public parks, parkways, boulevards and avenues of said city, the following described premises,'' and then followed a description of each specific park; ''that your orators were driven in vehicles by said sellers through said City of Zion, and said parks, avenues, parkways and boulevards, together with other thoroughfares, were pointed out and represented to each of them by said agents as public parks, avenues, boulevards, parkways and thoroughfares of said city, and your orators were told by said agents that said parks, avenues, boulevards, parkways and thoroughfares would enhance the value of their

lots, if they bought them; that your orators believed said representations to be true, and in fact the value of your orators' lots are increased by said parks, boulevards, avenues, parkways and thoroughfares, and they, and each of them, bought their said leases and lots relying on the fact there were said public parks in said city and near their said properties; that said parks would always be open to them for pleasure and refreshment from their labors; and that said boulevards, avenues, parkways and thoroughfares were public, and would always be open to them for the purpose of their business, convenience and pleasure driving, and that their said properties would be increased in value by the location in said city of said public grounds and thoroughfares.''

From these averments it appears that the sales were made to each of these appellees in the manner described in the bill. If such sales were in fact made under such representations the specific date thereof and whether appellees entered into possession were not material. For the purposes of this case the allegations of the bill must be considered as true, and, if they are true, they are sufficient to entitle the appellees to relief in a court of equity. Nor can it be inferred from these allegations that the conveyances to appellees were made after the vacation of the plat, or after the date of the resolution passed by the city council. Voliva claimed title through mesne conveyances from Dowie, and if Dowie did not have good title, as was held in the Stevenson case, then it naturally followed that Voliva would not have good title. On the other hand, even if appellees did not purchase prior to the vacation, but their grantors or lessors purchased prior to that time, appellees would be vested with whatever rights and title their grantors and lessors may have had. The date of the various purchases by appellees and whether they entered into possession were all questions of facts to be established

by evidence to be introduced on the final hearing in support of the allegations of the bill. We think these allegations were sufficient on these points to sustain an injunction. While the legal title of Voliva may, to a certain extent, be involved, yet the real purpose of the bill was not to try his title to these public grounds, but was to restrain Voliva and the city officials, by injunction, from interfering with the rights of the public in the free use and enjoyment of the public grounds of the city. The *Stevenson* case and the cases cited in *Hamilton v. Semet Solvay Co., supra,* amply sustained such equity jurisdiction.

The appellees are not barred by laches from maintaining this suit. In *Coryell v. Klehm,* 157 Ill. 462, it was held that a court of equity applies the doctrine of laches in denial of relief only where, from the circumstances, to grant the relief to which the complainant would otherwise be entitled will, presumptively, be inequitable and unjust, because of delay. As was held in the *Stevenson* case the equities are with the appellees under the averment of the bill and to deny them the relief sought would be inequitable and the doctrine of laches does not apply.

The chancellor committed no error in granting the temporary injunction and the decree will be affirmed.

*Decree affirmed.*